71774. MILLER et al. v. CLABBY et al.

(344 SE2d 751)

Pope, Judge.

On November 21, 1983 plaintiffs/appellants purchased a residence and certain surrounding acreage in unincorporated Cobb County from defendants/appellees. On February 10, 1984 plaintiffs brought this action alleging fraud and misrepresentation concerning the quality of a portion of the land surrounding the house, and seeking rescission of the sale, actual and punitive damages, and attorney fees. Following discovery defendants moved for and were granted summary judgment.

The allegation of fraud here relates to a fenced pasture area of the subject property; there is no allegation that the house is in any manner defective. Plaintiffs assert that upon inquiry of defendants they were told that the pasture was suitable for raising horses, and that within a week after plaintiffs had taken possession of the property, the pasture flooded twice during rainstorms. Although the flooding subsided within 24 hours after the storms, plaintiffs contend that the pasture is unsuitable for the raising of horses and that defendants defrauded them into thinking otherwise by concealing the pasture's tendency to flood during a heavy rain.

The pertinent evidence of record shows that defendants raised horses in the subject pasture for several years until their children lost interest in the animals. At the time of plaintiffs' first visit to the property, cattle were grazing in the pasture. Upon inquiry, defendants told plaintiffs that the pasture was suitable for raising horses and cited their experience in doing so. Plaintiffs were told that the pasture stayed dry and "there were no problems whatsoever," although the area beside the fenced pasture remained wet during most of the year due to the presence of underground springs. After entering into a contract of sale but prior to closing, plaintiffs walked the property and observed standing puddles of water in the pasture. Upon inquiry of defendants, they were told that the puddles were the result of a nearby drainage ditch being clogged. The ditch drained into a creek located just beyond the fenced pasture. Shortly after the plaintiffs moved in, most of the pasture was flooded on more than one occasion with surging water during a rainstorm. Mr. Miller talked with Dr. Clabby regarding the situation and was told by Clabby that he was well aware of the problem but because the property had been sold, he was not going to do anything about it.

The record also discloses that plaintiffs ordered and had at the closing a survey plat of the property which indicates that while the dwelling is not subject to flooding, "the property is partially located in an indentified flood hazard area." The record indicates that the plat was delivered by courier shortly after the formal closing had been

completed. The parties reviewed the plat upon its arrival, but the discussion centered upon one of the boundary lines as drawn. Plaintiffs did not read the language regarding the flood hazard. Mrs. Miller explained that "we noticed that it looked drawn wrong, and that distracted everyone's attention from other factors. . . ." Affidavits from federal and county officials also show that the subject property lies within an identified flood hazard area and that maps showing this were at all pertinent times a matter of public record in Cobb County.

" 'Misrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence. And where the representation consists of general commendations or *mere expressions of opinion*, hope, expectation and the like . . . the party to whom it is made is not justified in relying upon it and assuming it to be true; he is bound to make inquiry and examination for himself so as to ascertain the truth.' [Cit.]" *Brown v. Mack Trucks*, 111 Ga. App. 164, 167 (141 SE2d 208) (1965); see *Payne v. Smith*, 20 Ga. 654 (1856); *Napier v. Strong*, 19 Ga. App. 401 (5) (91 SE 579) (1917). We view defendants' assertions that the fenced pasture was "suitable" for raising horses as nothing more than mere expressions of opinion. See, e.g., *Wrenn & Sons v. Truitt*, 116 Ga. 708 (43 SE 52) (1902); *Collins v. Abel Holding Co.*, 89 Ga. App. 337, 344 (79 SE2d 436) (1953). It follows that plaintiffs were not justified in relying thereon.

As to whether fraud was committed by defendants' alleged concealment of the pasture's tendency to flood during a heavy rain, " '[c]oncealment of material facts may amount to fraud when direct inquiry is made, and the truth evaded, or where the concealment is of intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover.' [Cit.]" *Ga.-Car. Brick &c. Co. v. Brown*, 153 Ga. App. 747, 755 (266 SE2d 531) (1980). Plaintiffs assert that the pasture's tendency to flood is just such an intrinsic quality of the property, one that they could not have discovered except after a heavy rain. Citing *Wilhite v. Mays*, 239 Ga. 31 (235 SE2d 532) (1977), plaintiffs argue that defendants, under the facts in the case at bar, were under a duty to disclose the pasture's "hidden defect." See *Holman v. Ruesken*, 246 Ga. 557 (2) (272 SE2d 292) (1980). We are unable to agree with this characterization.

The "passive concealment doctrine" of *Wilhite* and *Holman* provides that a homeowner or other purchaser of property may be permitted to recover for latent building or other man-made construction defects about which he did not know and in the exercise of ordinary care would not have discovered, and which defects either were known to the builder or seller or in the exercise of ordinary care would have been known to him. See *Worthey v. Holmes*, 249 Ga. 104 (2) (287 SE2d 9) (1982). The alleged defect here was not "hidden" so that

plaintiffs, in the exercise of ordinary care, would not have discovered it. Under the facts in this case we do not believe plaintiffs themselves were required to search the county records to discover the existence of the flood hazard maps. See *Fenley v. Moody*, 104 Ga. 790 (30 SE 1002) (1898). However, the evidence of record shows the subject pasture to be in a low-lying area bounded on one side by a marshy or swampy area and on another by a creek. Prior to closing plaintiffs observed standing water (puddles) in the pasture. Furthermore, well in advance of the closing plaintiffs employed a registered land surveyor to survey the property. The resulting plat clearly disclosed the flood hazard, yet plaintiffs proceeded with the closing prior to its arrival. Even after the plat arrived and while all parties were present, plaintiffs did not read the information regarding the flood hazard which was plainly set forth on the plat.

"The law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect is due to indifference or credulity. 'When the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means he will not be heard to say, in impeachment of the contract of sale, that he was deceived by the vendor's representations.' [Cit.]" *Kirven v. Blackett*, 208 Ga. 178, 182 (65 SE2d 791) (1951); *Blanchard v. West*, 115 Ga. App. 814 (2) (156 SE2d 164) (1967). Under the circumstances in the case at bar, the trial court did not err in concluding as a matter of law that plaintiffs failed to exercise proper diligence in protecting themselves from defendants' alleged fraudulent concealment. See *Castleberry v. Scandrett*, 20 Ga. 242 (1) (1856); *Bimbo Bldrs. v. Stubbs Properties*, 158 Ga. App. 280 (1) (279 SE2d 730) (1981); *Gignilliat v. Borg*, 131 Ga. App. 182 (2) (205 SE2d 479) (1974). See also *Zeeman v. Black*, 156 Ga. App. 82, 87-9 (273 SE2d 910) (1980).

*Judgment affirmed. McMurray, P. J., and Carley, J., concur.*

DECIDED APRIL 23, 1986.

*John R. Gaughen*, for appellants.
*James W. Friedewald, Meg Tysinger Hartin*, for appellees.