**FIRST DIVISION
ELLINGTON, C. J.,
PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**November 26, 2012**

# In the Court of Appeals of Georgia

A12A1595. CIRCLE K STORES, INC. v. T. O. H ASSOCIATES, LTD.

PHIPPS, Presiding Judge.

The trial court granted summary judgment to T. O. H Associates, Ltd. in TOH's suit against Circle K Stores, Inc., alleging that Circle K breached the terms of a lease and an assignment and assumption of lease by failing to pay rent under the terms therein.

Circle K appeals, contending that the trial court erred in granting summary judgment to TOH because: 1) TOH's acceptance of partial rent payments created a question of fact as to whether TOH departed from the material terms of the lease; 2) the lease had been terminated and thus Circle K had no obligation to pay the rent and costs accrued thereafter; 3) a question of fact remains as to the monthly rent due; and

4) a question of fact exists as to whether TOH properly mitigated its damages. For the reasons that follow, we affirm the grant of summary judgment as to liability, vacate the judgment as to damages, and remand the case to the trial court on the issue of damages.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] "In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant."[2]

On or about November 9, 1987, TOH entered into a lease with National Convenience Stores, Inc. for the lease of certain real property. TOH was the lessor and National Convenience was the lessee. According to the lease, National Convenience intended to construct a building and other improvements to the property

---

[1] OCGA § 9-11-56 (c).

[2] *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citation and punctuation omitted).

for the purpose of operating a convenience store with self-serve gasoline. The lease was for a term of 25 years that would expire on or about November 9, 2012.

On or about April 29, 1994, National Convenience assigned its interest in the lease to Circle K. The lease was subsequently assigned and re-assigned to various entities, but with Circle K remaining as a guarantor, under the terms of an assignment and assumption of lease document. In October 2009 and January 2010, TOH notified Circle K in writing of a delinquency in rental payments for the property by one of the assignees. To its notices, TOH attached documents showing rental and payment histories which showed full and partial rent payments past due from January 2009 to October 2009 and January 2010, respectively.

In March 2010, TOH filed a complaint alleging that Circle K breached the lease and assignment and assumption of lease by failing and refusing to pay, among other things, the monthly rent from February 1, 2009 to March 1, 2010, according to the terms of the documents. TOH later moved for summary judgment and submitted another invoice showing full and partial rent payments past due from January 2009 to April 1, 2011.

1. Circle K contends that the trial court erred in granting summary judgment to TOH because Circle K was not liable to TOH for rent under the lease terms. Circle

3

K asserts that TOH had accepted partial rent payments from February 2009 to March 2011, and that "without proper notice of its intent to maintain the exact terms of the lease . . . a question of fact [exists] as to whether the parties departed from the strict terms of the lease," and thus, as to "what lease terms were in effect."

> A mutual departure from the terms of an agreement results in a quasi-new agreement suspending the original terms of the agreement until one party has given the other reasonable notice of its intent to rely on the original terms. . . . The question whether the parties' mutual conduct caused a waiver and effected a quasi-new agreement ordinarily is a question for the jury. . . .[3]

TOH's manager deposed that although dating back to January 2009, TOH accepted partial rent payments from the current tenant (an assignee), TOH did not accept the partial rent payments "without identifying to the tenant that he's underpaying his rent." The manager deposed that he met with the tenant "probably once a month and attempt[ed] to collect rent from him." The manager deposed that TOH accepted the partial payments to offset and mitigate loss. When asked whether he had ever "said to [the tenant], You need to pay in full or we're going to remove

---

[3] *Westmoreland v. JW, LLC*, 313 Ga. App. 486, 489 (2) (722 SE2d 102) (2012) (citations and punctuation omitted); see OCGA § 13-4-4.

4

you from the property," the manager deposed "We have said that to him." And regarding the history of the lease prior to the current tenant, the manager deposed that "there were multitudes of defaults in this lease, almost monthly, from all of the tenants from the beginning," and affirmed that "Circle K has in the past corrected any deficiency."

To support its position, Circle K relies upon *B-Lee's Sales Co. v. Shelton,*[4] but that case is distinguishable. There, the landlord twice agreed to a reduced rate of rent and told the tenants to just "do the best you can" in making rent payments.[5] In the present case, there was no evidence that any departure from the lease regarding rental payments was mutual, or that TOH agreed to waive the tenant's liability for the shortfall between the amount of rent required by the lease documents and the partial payment amounts which TOH accepted to mitigate its loss.

"[O]ral modifications as to those matters in a contract required by the Statute of Frauds to be in writing are ineffective unless the contract as so modified has been

---

[4] 141 Ga. App. 870 (234 SE2d 702) (1977).

[5] Id. at 870.

acted on or performed by one of the parties."[6] One reason the performance of an oral

modification to a written contract is an exception to the general rule is that

> [a] plaintiff having accepted the benefits arising under the contract after being notified of an anticipated breach, and not having given notice of his intention to rely on its exact terms, but having continued to accept the benefits thereunder, may not recover for such alleged breach or failure to perform fully the complete terms of the original agreement.[7]

There was no evidence that the current tenant notified TOH that it (the tenant)

anticipated breaching the contract, thus barring TOH from recovering for such breach

or failure to perform fully the complete terms of the original agreement. "[W]here .

. . a modification of the written contract has been agreed to by all parties, performed

by one and accepted by the other, there is a waiver of the provisions of the original

contract as to rental amount."[8] As Circle K has failed to point to any agreement by

TOH to modify the terms of the lease or assignment and assumption of lease, TOH

has reserved its right to enforce that provision of the written contract relating to the

---

[6] Id. at 872 (1) (citation and punctuation omitted).

[7] Id.

[8] Id. at 872-873 (1) (citations omitted).

rental amount. Accordingly, the trial court properly granted summary judgment to TOH in this regard.

2. Circle K contends that the trial court erred in granting summary judgment to TOH because the lease had been terminated as to two prior tenants, and thus, Circle K had no obligation to pay rent and costs accrued after the current tenant took occupancy. We disagree.

Circle K relies on *Savannah Yacht Corp. v. Thunderbolt Marine, Inc.*,[9] for the following proposition.

> A surrender of a lease by operation of law may arise from any condition of facts voluntarily assumed by the parties and incompatible with the continued existence of the relation of landlord and tenant between them. Where a landlord exercises a control over the premises inconsistent with the tenant's right of occupation, he thereby discharges the tenant from liability for future rent, and a cancellation or rescission of the contract is thus effected by agreement of the parties, express or implied.[10]

The court further explained, however:

> More specifically, where a landlord himself has retaken a property vacated by a tenant, thus "getting the use of the premises for himself,"

_____

[9] 297 Ga. App. 104 (676 SE2d 728) (2009).

[10] Id. at 111 (2) (citation and punctuation omitted).

7

any charging of rent after repossession is "not only illegal but wholly inequitable."[11] In *Gay*, for example, the plaintiff landlord allowed members of his family to occupy the property after the defendant tenants had abandoned it.[12] We held that where "the plaintiff's own testimony showed that he was not entitled to recover for the full year's rent, on account of his admitted resumption of the possession," the tenants were entitled to a nonsuit, or judgment as a matter of law.[13] Likewise, in *Brock Enterprises v. Dunham's Bay Boat Co.*,[14] the court held that where a landlord took repossession of a boat repair facility, allowed another tenant to take possession, and began accepting rent from that tenant, the landlord's conduct "demonstrated an 'intent to terminate the lease and use the premises for (its) own benefit'" as a matter of law.[15]

To show a surrender, a mutual agreement between lessor and lessee that the lease is terminated must be clearly proved.[16]

---

[11] *Baldwin v. Lampkin*, 14 Ga. App. 828 (82 SE 369) (1914), citing *Gay v. Peake*, 5 Ga. App. 583 (63 SE 650) (1909).

[12] *Gay*, supra at 584-585.

[13] Id.

[14] 292 A.D.2d 681 (738 NYS2d 760) (2002).

[15] *Savannah Yacht Corp.*, supra at 111-112 (2).

[16] *Sirdah v. North Springs Assoc.*, 304 Ga. App. 348, 351 (1) (696 SE2d 391) (2010).

Circle K's reliance on *Savannah Yacht Corp* is misplaced. Although in this case there was evidence that dispossessory actions were filed against two prior tenants, Circle K points to no evidence showing that after those dispossessory actions were filed, TOH resumed possession of the property (or retook the property vacated by a tenant and thus, got the use of the premises) for itself; nor does Circle K make any argument to that effect.

According to Circle K, the two prior tenants against whom dispossessory actions were filed had abandoned the property. "In Georgia, if a tenant abandons leased premises without authorization prior to the expiration of the term, the landlord is not required to mitigate damages by reletting the premises. Rather, he may allow the premises to remain vacant and hold the tenant responsible for accruing rent."[17] Although the prior tenants' *occupancy* of the premises had terminated, Circle K points to no proof that the *leases*, likewise, were terminated. The evidence showed that after any abandonment of the property, the lease was reassigned by the tenants.

> When a motion for summary judgment is made and supported as provided in [OCGA 9-11-56], an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in [OCGA 9-11-56], must set forth

[17] Id. at 350 (1) (citations omitted).

9

specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.[18]

Having failed to come forward with evidence to show a surrender of the lease by operation of law or by mutual agreement, Circle K failed to set forth specific facts showing that there is a genuine issue of whether the lease had been terminated. Accordingly, the trial court properly granted summary judgment to TOH regarding Circle K's obligation to pay rent and costs after the current tenant took occupancy of the premises.

3. Circle K contends that the trial court erred in granting summary judgment to TOH as to the amount of damages due and as to the award of attorney fees because a question of fact remains as to the monthly rent due under the lease. We agree.

"It is axiomatic that [TOH], as plaintiff, had the burden to prove the amount of any alleged damages with reasonable certainty."[19] In its complaint, TOH requested that it be awarded, among other things, "damages representing the amount due under

_____

[18] OCGA 9-11-56 (e); see *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[19] *Post Realty Assoc. v. DSL Assoc.*, 228 Ga. App. 678, 679 (1) (492 SE2d 600) (1997) (citations omitted).

10

the terms of the Lease." In moving for summary judgment, TOH presented the affidavit of its property manager who swore that Circle K had "failed and refused to pay TOH the outstanding amounts due and owing for rental payments and costs for the property" as provided in a document showing rental and payment histories attached as an exhibit to the affidavit. That invoice showed that from January 2009 to April 2011 rent was billed in the amount of $12,144.75 per month. Yet, in its motion for summary judgment, TOH attached a copy of the 1987 lease and of a "First Amendment of Lease" executed on July 20, 1988, and showing rental payments, pertinently, due in the amount of $11,587 per month. The trial court apparently awarded damages based on the $12,144.75 figure shown on the invoice. But no explanation for the discrepancy between the figures shown in the invoice and those shown in the amended lease appears in the appellate record.

As a genuine issue of material fact exists as to the amount of rent due, we vacate the trial court's grant of summary judgment as it pertains to the amount of rent due from January 2009 to April 2011, and as to the award of attorney fees; and we remand the case to the trial court for a determination of the amount of damages due and attorney fees, if any.

11

4. Circle K contends that the trial court erred in granting summary judgment to TOH because a question of fact exists as to whether TOH attempted to mitigate its damages. We do not agree.

"[T]he general rule, that it is the duty of a party suffering from the breach of a contract to diminish, if possible, the damages, has no application to a contract of lease."[20] Circle K argues that even if landlord-tenant law does not require TOH to mitigate its damages suffered as a result of a breach of a lease contract, Circle K is being sued based upon the guaranty provisions of the lease and the assignment and assumption of lease, and thus, TOH had a duty under those guaranty provisions to mitigate its damages.

Circle K points to no provision of the lease or assignment and assumption of lease that imposes upon TOH a duty to mitigate damages. "Further, assuming mitigation of damages was required, it is [Circle K] who bears the burden of alleging and proving as a defensive matter [TOH]'s failure to mitigate, and such a contention must be supported by evidence from which a jury could reasonably estimate the

---

[20] *Peterson v. Midas Realty Corp.*, 160 Ga. App. 333, 334 (287 SE2d 61) (1981) (citation and punctuation omitted).

12

amount by which damages could have been mitigated."[21] To attempt to meet its burden and show that TOH could have mitigated its damages, Circle K asserts:

> TOH has admitted it has not even attempted to find a new tenant for the Property, despite the lengthy history of [the current tenant] making reduced payments. At a minimum, the trial court should have addressed the issue of mitigation of damages under the guaranty, as well as whether TOH used commercially reasonable efforts to market the property.

Yet Circle K also asserted that prior to the re-assignment of the lease to the current tenant, there had been discussions between TOH, Circle K, and a third party who was interested in taking over the lease obligations as a tenant, and that for reason(s) unknown, the third party was not assigned the lease. Circle K has not "show[n] as a matter of law, so as to preclude recovery altogether or of a particular amount, that [TOH] failed to mitigate [its] damages or to what extent [it] failed."[22] Accordingly, we find Circle K's contention to be without merit.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Ellington, C. J., and Dillard, J., concur.*

---

[21] *Lamb v. Decatur Fed. Sav. & Loan Assn.*, 201 Ga. App. 583, 587 (2) (411 SE2d 527) (1991) (citations and punctuation omitted).

[22] See id.