**WHOLE COURT**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. http://www.gaappeals.us/rules**

**March 30, 2016**

# In the Court of Appeals of Georgia

A15A1830, A15A1831. WEST ASSET MANAGEMENT, INC. v. NW PARKWAY, LLC; and vice versa.          JE-087, JE-088

ELLINGTON, Presiding Judge.

NW Parkway, LLC, brought this action in the Superior Court of Cobb County against West Asset Management, Inc. for claims arising from a commercial property lease agreement. West filed counterclaims arising out of the same lease. Both parties moved for summary judgment, which the trial court granted in part and denied in part. In Case No. A15A1830, West Asset appeals the trial court's rulings in various respects, and in Case No. A15A1831, NW Parkway cross-appeals. For the reasons explained below, we affirm in part and reverse in part.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" OCGA § 9-11-56 (c).

> Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant [or denial] of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010). When, as in this case, the parties file cross-motions for summary judgment, "each party must show [that] there is no genuine issue of material fact regarding the resolution of [the essential] points of inquiry and that each, respectively, is entitled to summary judgment; either party, to prevail by summary judgment, must bear its burden of proof." *Morgan Enterprises, Inc. v. Gordon Gillett Business Realty*, 196 Ga. App. 112 (395 SE2d 303) (1990). See also *Wells Fargo Bank v. Twenty Six Properties, LLC*, 325 Ga. App. 662 (754 SE2d 630) (2014) (accord). A grant of summary judgment must be affirmed if it is right for any reason, including for an alternate ground that the trial court chose not to address in granting summary judgment, so long as the movant raised the issue in the trial court and the

2

nonmovant had a fair opportunity to respond. *Georgia-Pacific, LLC v. Fields*, 293 Ga. 499, 504 (2) (748 SE2d 407) (2013); *City of Gainesville v. Dodd*, 275 Ga. 834, 839 (573 SE2d 369) (2002); *Abellera v. Williamson*, 274 Ga. 324, 326 (2) (553 SE2d 806) (2001). The relevant facts that follow are undisputed unless otherwise noted.

On July 20, 2004, NW Parkway, as lessor, and Worldwide Asset Management, LLC ("Worldwide"), West's predecessor-in-interest, as lessee, executed the lease at issue for 70,000 square feet of office space for a 20-year term from August 1, 2004, to July 31, 2024. The lease was a so-called "triple net lease"[1] that (in "Special Stipulation 3") made West responsible for "all expenses for the entire property and building[ ] of any nature whatsoever during the term of this lease," including property taxes, except that NW Parkway "shall be responsible for any expense directly associated with and actually incurred with respect to the concrete walls, concrete slab, and foundation." West "acknowledge[d] that the premises [were] in good order and repair" at the beginning of the lease and specifically agreed to maintain the premises

---

[1] See Black's Law Dictionary (10th ed. 2014) (A "triple net lease" or "net-net-net lease" is one "in which the lessee pays all the expenses, including mortgage interest and amortization, leaving the lessor with an amount free of all claims.").

at its own expense and to surrender the premises at the termination of the lease in as good condition as received, normal wear and tear excepted.

The contract (in "Special Stipulation 4") allowed West the option of terminating the contract at five year intervals, at the end of the fifth, tenth, and fifteenth years, provided, inter alia, that, "for said option to be valid and effective, [West] shall . . . not be in default under any of the provisions of this lease" and that West shall "provide [NW Parkway] with written notice (90) days in advance of the end of the [five-year interval]." In the event of such early termination, the lease provided that West would continue to pay rent for an additional six months and vacate the premises by the end of that period. The first five-year interval ended July 31, 2009, meaning that the contract required West to give notice on or before May 2, 2009, to exercise the early-termination option, and to vacate by January 31, 2010.

In early 2008, NW Parkway obtained a professional inspection to determine whether West was maintaining the property. The inspector noted evidence of ineffective drainage and standing water in areas of the roof, as well as multiple areas that had been repeatedly patched but appeared likely to leak. The inspector concluded, "[b]ased on the number of layers of patching material and the deteriorated condition of the top layer of many patches, the roof is due for replacing" and also

4

recommended certain other repairs. Based on the inspector's report, NW Parkway requested in a letter dated February 27, 2008, that West "correct the[ ] deficiencies" indicated in the report, including by replacing the roof. In a letter dated June 2, 2008, West asserted that it was NW Parkway's sole obligation to replace the roof and that West was obligated only to maintain the roof in as good condition as received. West did not replace the roof.

In a letter dated July 10, 2008, NW Parkway notified West that it was in default under the lease for failure "to perform and pay for the required roof and other repairs" and demanded that West cure the default within thirty days. After thirty days, NW Parkway notified West that it had failed to cure the default within the time allowed and that it had therefore lost its "ability to cure [its] default under the Lease" and "forfeited [its] right to terminate the Lease prior to July 31, 2024 under Special Stipulation 4[.]" When NW Parkway sent its contractor to the property to replace the roof and perform other repairs, West denied the contractor access. In a letter dated August 15, 2008, West stated:

> No permission has been granted to NW Parkway to send a roofing vendor to the premises. Unless there is an agreement to the contrary, [NW Parkway] has no right to enter upon the premises except with permission of [West]. . . . As we have stated, West has repaired the roofs

5

as appropriate during the lease term, and, will continue to do so. If [NW Parkway] removes the existing roof system, it will be impossible for West to make repairs. It is the tenant's role under the Lease Agreement to establish the type of repairs which are appropriate for the roofs, not [NW Parkway's] role. If [the contractor] attempts to enter the premises, it will be turned away.

In October 2008, NW Parkway filed this action, seeking damages and an emergency restraining order to compel West to allow the replacement of the roof and other necessary repairs. In November 2008, the trial court granted NW Parkway's request for a TRO and enjoined West from interfering with NW Parkway or it contractors from replacing the roof and repairing the exterior of the buildings. As the trial court noted, West claimed that the roof did not need to be replaced, referring to an evaluation performed by a roofing company it had engaged, but failed to present that company's report to the court. The court found that West had failed to adduce any evidence to contradict the evidence presented by NW Parkway that the roof needed to be replaced. After the court issued the TRO, NW Parkway's chosen contractor performed the work; the cost to replace the roof and repair the property was $384,226. In December 2008, West answered NW Parkway's complaint and asserted counterclaims for fraud, negligence, breach of contract, and setoff and

requested a declaratory judgment that it was entitled to exercise its right to early termination.

On December 31, 2008, West sent a letter "to constitute [its] notice of early termination" pursuant to Special Stipulation 4. By letter dated January 26, 2009, NW Parkway "rejected" West's termination on the basis that West was "in breach of the lease for failing to pay expenses for the replacement of the roof and other repair expenses[,]" which prohibited West "from terminating the lease as the result of such failure." In March 2009, West filed a motion for partial summary judgment on its request for a declaratory judgment that it was entitled to exercise its right to early termination. At the same time, while maintaining its position that it was not responsible for replacing the roof under the lease, West filed a request for leave to pay into the registry of the court the disputed amount, $384,226, which was the amount NW Parkway spent to replace the roof and repair the buildings' exteriors. In its request to pay the funds into the registry of the court, West stated that it was seeking to preserve its right to terminate the lease at the end of the first five-year interval. In April 2009, NW Parkway amended its complaint, seeking $384,226 in damages for roof-related expenses, among other relief.

The trial court heard West's motion for partial summary judgment on April 23, 2009, less than two weeks before the deadline for giving notice of termination before the end of the first five-year interval. At the hearing, NW Parkway's counsel acknowledged that there was a question of fact whether the roof needed repair or needed replacement. West's counsel asked that, because the deadline was approaching, the court accept the money into the registry of the court so that West could cure any arguable default and stated, "If there's something else that we're required to do in order to cure this default and exercise our termination right, then, . . . we want to do that."

In September 2009, the trial court granted West's motion for partial summary judgment, on the basis, inter alia, that West was not in default of the lease because it did not have an obligation to replace the roof and entered a declaratory judgment that West was entitled to exercise its right to early termination. The trial court expressly declined to reach the issues whether West breached the lease or what damages, if any, NW Parkway could recover. NW Parkway filed a notice of appeal.

While docketing of that first appeal, Case No. A10A1781, was pending, West acted on the trial court's ruling that it was entitled to exercise its right to terminate the lease at the end of the first five-year interval by vacating the property. West tendered

8

possession as of January 31, 2010, and NW Parkway accepted possession, in compliance with the declaratory judgment "until such time as it could be reversed on appeal." Thereafter, NW Parkway transferred utility accounts so that it could keep the utilities active, took over contracts for custodial services and landscaping, paid property taxes, tried to find a new tenant, and listed the property for sale.

On March 24, 2011, we issued a decision in Case No. A10A1781 and reversed the September 2009 declaratory judgment, holding: "[b]ased on the plain language of the lease, the trial court erred by finding that West was not obligated to replace the roof and by basing its determination that West was not in default upon this finding." *NW Parkway, LLC v. Lemser*, 309 Ga. App. 172, 177 (2) (709 SE2d 858) (2011), cert. denied, November 30, 2011. In addition, we concluded that the undisputed evidence established that, by failing to replace the roof, West failed to comply with one of the four conditions precedent for the early termination option to apply. Id. at 178 (3). This failure "constituted default, which prevented West from timely complying with the terms of the optional early termination clause in order to terminate at the five-year point." (Footnote omitted.) Id.

The trial court belatedly ruled on West's request for leave to pay $384,226 into the registry of the court and granted the request on August 29, 2012, "nunc pro tunc"

9

April 30, 2009 (after the hearing and before the deadline for notice of early termination).

In December 2012, NW Parkway sold the property. In the sales agreement, NW Parkway gave "Warranties and Representations" that "[t]here are no leases . . . in force or effect that grant to any person whomsoever or any entity whatsoever any right, title, interest or benefit in or to all or any part of the Property."

In October 2014, NW Parkway filed a motion for partial summary judgment, as to its Count 1, roof-related expenses, its Count 2, anticipatory breach of contract, and West's counterclaims (fraud, negligence, breach of contract, setoff, and declaratory relief regarding right to early termination). West also filed a motion for partial summary judgment, as to NW Parkway's Count 2, anticipatory breach of contract, and specifically disputed the components of NW Parkway's claimed damages (additional rents, late fees, and contractual attorney fees). On March 12, 2015, the trial court entered an order ruling on the parties' cross motions for partial summary judgment. The trial court granted partial summary judgment to NW Parkway and to West in certain respects and denied their motions as to other issues, as specified below.

1. The trial court denied in part the parties' cross-motions for summary judgment on NW Parkway's Count 2, its claim for breach and anticipatory breach of the lease agreement, seeking rents accruing after January 2010, expenses, late charges, interest, and contractual attorney fees.[2] This ruling was supported by the court's determination that material questions of fact remain regarding whether West satisfied the conditions for terminating the lease at the end of the first five-year interval. In particular, the trial court determined that there is a jury question regarding West's tender defense, that is, that West's tender of the roof-related expenses, by moving to deposit $384,226 into the registry of the court, was sufficient to defeat NW Parkway's claim that West breached the lease by failing to replace the roof. An alternative basis for the denial of summary judgment on NW Parkway's Count 2 was the court's determination that material questions of fact remain regarding whether a surrender took place as of January 2010, that is, whether NW Parkway took actions incompatible with the continued existence of West's leasehold after that date. Both sides appeal.

---

[2] The trial court's ruling discussed in Division 2, infra, limits NW Parkway's claim for rents to the period January 2010 through December 2012, when NW Parkway sold the property.

We agree with NW Parkway that, as a result of our decision in the first appeal, the issue whether West satisfied the conditions for terminating the lease at the end of the first five-year interval has been decided adversely to West. *NW Parkway, LLC v. Lemser*, 309 Ga. App. at 178 (3). See OCGA § 9-11-60 (h) ("[A]ny ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be."); *1H Riverdale, LLC v. McChesney Capital Partners, LLC*, 292 Ga. App. 841, 843-844 (666 SE2d 8) (2008) (After appellate court held that plaintiffs were not entitled to distribution of profits under an operating agreement, trial court was precluded from granting defendants' renewed motion for summary judgment as to profit distribution.); *McLean v. Continental Wingate Co., Inc.*, 222 Ga. App. 805, 806-807 (1) (476 SE2d 83) (1996) (After appellate court held that contractual provision was not unenforceably vague, trial court was precluded from granting defendants' renewed motion for summary judgment, on grounds that provision was too vague to be enforceable.). Accordingly, the trial court's determination that there is a jury question whether West satisfied the conditions for unilaterally terminating the lease at the end of the first five-year interval was incorrect.

With regard to West's argument that it cured its breach of its obligation to replace the roof by moving to deposit $384,226, the amount NW Parkway spent on repairs, into the registry of the court, we agree with NW Parkway that such tender could not prospectively excuse West's failure to satisfy its *other* obligations under the lease, e. g., payment of rent, given the binding determination that West was not entitled to terminate the lease at the end of the first five-year interval. Accordingly, the trial court's determination that there is a jury question regarding West's tender defense was incorrect.

In denying summary judgment on NW Parkway's Count 2, the trial court also determined that material questions of fact remain regarding whether NW Parkway's conduct in January 2010 resulted in a surrender. As West contends, NW Parkway took actions that are potentially incompatible with the continued existence of West's leasehold after that date, such as paying utilities, service contracts, and property taxes, all of which were West's responsibility under the triple-net lease, and listing the property for sale.[3] But NW Parkway has identified evidence, which is undisputed,

---

[3] See *Circle K Stores, Inc. v. T.O.H. Assocs., Ltd.*, 318 Ga. App. 753, 756 (2) (734 SE2d 752) (2012) ("A surrender of a lease by operation of law may arise from any condition of facts voluntarily assumed by the parties and incompatible with the continued existence of the relation of landlord and tenant between them. Where a landlord exercises a control over the premises inconsistent with the tenant's right of

13

that, because the trial court's declaratory judgment ruling allowed West to vacate the

premises and to stop maintaining the property, NW Parkway took those actions in

order to prevent damage to the property.[4] There is no evidence that NW Parkway

accepted rent from another tenant or occupied the premises itself and conducted

business operations there.[5] Accordingly, the trial court's determination that there is

occupation, he thereby discharges the tenant from liability for future rent, and a cancellation or rescission of the contract is thus effected by agreement of the parties, express or implied.") (punctuation and footnotes omitted).

[4] See *Circle K Stores, Inc. v. T.O.H. Assocs., Ltd.*, 318 Ga. App. at 757 (2) ("To show a surrender, a mutual agreement between lessor and lessee that the lease is terminated must be clearly proved.") (footnote omitted); *Sirdah v. N. Springs Assocs.*, 304 Ga. App. 348, 351 (1) (696 SE2d 391) (2010) ("The mere taking of the keys to the leased premises by a landlord does not give rise to an inference that the landlord accepted surrender of the premises. Likewise, the mere entry upon the premises to protect the property after abandonment by the lessee will not amount to an acceptance of a surrender of a lease.") (citations and punctuation omitted); *Erfani v. Bishop*, 251 Ga. App. 20, 22 (1) (c) (553 SE2d 326) (2001) (accord); *Lawson v. Crawford*, 220 Ga. App. 447, 448 (469 SE2d 507) (1996) (Where a tenant abandons leased premises without the consent of the landlord, "the landlord has the option of (1) terminating the lease, (2) obtaining another tenant while holding the original tenant liable for any deficiency that may occur, or (3) permitting the premises to remain vacant while collecting the agreed-upon rent from the original tenant. . . . A surrender of premises by a lessee has no legal effect until accepted by the lessor.") (citation and punctuation omitted).

[5] Cf. *Savannah Yacht Corp. v. Thunderbolt Marine, Inc.*, 297 Ga. App. 104, 111 (2) (676 SE2d 728) (2009) (where lessor forced lessee's subtenant in possession to vacate the property, occupied the property itself, and began operating its own marina and yacht repair business there, lease was terminated by operation of law).

14

a jury question whether NW Parkway accepted West's surrender of the lease as of January 2010 was incorrect,[6] and the trial court erred in denying NW Parkway's motion for summary judgment in this regard. *Circle K Stores, Inc. v. T.O.H. Assocs., Ltd.*, 318 Ga. App. 757-758 (2) (734 SE2d 752) (2012); *Sirdah v. N. Springs Assocs.*, 304 Ga. App. 348, 351 (1) (696 SE2d 391) (2010).

2. The trial court determined that NW Parkway is not entitled to any rents after December 2012, when it sold the property and expressly disclaimed the existence of any lease then in force that granted any right, title, interest or benefit in the property to any person or entity. The trial court accordingly granted West's motion for summary judgment on NW Parkway's claim for rents (Count 2) in part, as to rents accruing after December 2012. NW Parkway appeals the partial grant of West's motion.

NW Parkway contends that it is entitled to collect rent for the entire 20-year term, despite its sale of the property in the eighth year of the lease, because the lease "disclaims set-offs or deductions against rent." Specifically, NW Parkway points to Paragraph 1, which provides that the base rent of the lease "shall be payable by

---

[6] As explained in Division 2, infra, the record does establish that the landlord-tenant relationship ended when NW Parkway sold the property in December 2012.

15

[West] in monthly installments on or before the first day of each month in advance . . . without any prior demand therefore, and without any deduction or setoff whatsoever, and shall be payable to [NW Parkway]." NW Parkway argues that in agreeing to base rent being due "without any deduction or setoff whatsoever" West "knowingly accepted a rent obligation for a term of twenty years" regardless of later events. Read in context with the "triple-net" stipulation and provisions regarding West's obligations to pay the property taxes and other expenses associated with the property and to maintain the premises at its own expense, however, we conclude that the modifier "without any deduction or setoff whatsoever" refers to West's obligation to bear all expenses associated with the property (with the specified exception of those incurred with respect to the concrete walls, concrete slab, and foundation). We find no basis for construing the modifier "without any deduction or setoff whatsoever" to obligate West to pay rent for a period when NW Parkway lacks legal ownership of the property with the concomitant ability to provide West possession and use of the property as a tenant.[7] Because the record establishes that NW

_____

[7] See OCGA § 44-6-102 ("The grant by one person to another of an estate for years out of his own estate, with reversion to himself, is usually termed a lease."); 44-7-1 (a) ("The relationship of landlord and tenant is created when the owner of real estate grants to another person, who accepts such grant, the right simply to possess and enjoy the use of such real estate either for a fixed time or at the will of the

16

Parkway's sale of the property in December 2012 terminated its landlord-tenant relationship with West, West's obligation to pay rent under the lease from that point to the original termination date of July 31, 2024 necessarily ended. *Noble v. Kerr*, 123 Ga. App. 319, 319-320 (1) (180 SE2d 601) (1971).[8] Accordingly, the trial court did not err in granting West's partial motion for summary judgment in this regard.

3. The trial court determined that there are questions of fact regarding whether the lease's late-charges provision, Paragraph 27, is an unenforceable penalty and denied West's motion for summary judgment on NW Parkway's claim for late fees as part of Count 2. West appeals the partial denial of its motion.

grantor."); *Sharpe v. Mathews*, 123 Ga. 794, 797-798 (2) (51 SE 706) (1905) (The relation of landlord and tenant arises when a party occupies the land or premises of another in subordination to the other's title and with his assent, express or implied.).

[8] NW Parkway's reliance on *American Med. Transport Group v. Glo-An, Inc.* 235 Ga. App. 464, 466 (1) (509 SE2d 738) (1998), is misplaced. In that case, a lease provided that in event of default, the landlord could evict the tenant and the tenant agreed to pay any damage the landlord might suffer by reason of the termination of the tenant's possession, such as by inability to relet the premises on satisfactory terms, and provided that the tenant would pay the specified rent "without deduction or set off, for the entire term [of the lease]." We held that the lease terms expressed the parties' intention to hold the tenant responsible for after-accrued rent even should an eviction take place, and, therefore, the landlord was entitled to summary judgment for rent for the lease term remaining after the tenant abandoned the premises without the landlord's consent and the landlord was unable to relet the premises. In contrast to this case, there was no evidence that the landlord ever repudiated the continuation of the leasehold by selling the property and disclaiming the existence of any lease.

Paragraph 27 provides that "there shall be due and payable by [West] to [NW Parkway], as of the fifth day of each month during the term [of the lease], a Late Charge in an amount equal to ten percent of all sums which are due and payable [under the lease] but have not, as of such date, been received by [NW Parkway]." Another paragraph provided for 15 percent interest to accrue on past due obligations.

OCGA § 13-6-7 provides: "If the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated, and unless the agreement violates some principle of law, the parties are bound thereby." But a provision that is intended to deter breaches of the contract by imposing a penalty for a breach that is not a reasonable pre-estimation of damages is unenforceable under Georgia law. *Southeastern Land Fund, Inc. v. Real Estate World, Inc.*, 237 Ga. 227, 230 (227 SE2d 340) (1976); *Alexander v. Steining*, 197 Ga. App. 328, 329-330 (2) (398 SE2d 390) (1990). In order to resolve whether a provision for damages for breach amounts to "liquidated damages" under OCGA § 13-6-7, or is an unenforceable penalty clause,

> the trial court at the summary judgment level must conduct a tripartite inquiry according to these standards: First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and third, the sum stipulated must be a reasonable pre-estimate of the loss.

18

*Morgan Enterprises, Inc. v. Gordon Gillett Business Realty*, 196 Ga. App. at 112. At this stage, the burden is on West to show that the late charge is a penalty as a matter of law. Id.[9] "In cases of doubt, the courts favor the construction [of a contract] which holds the stipulated sum to be a penalty, and limits the recovery to the amount of damage[s] actually shown, rather than a liquidation of the damages." (Citation and punctuation omitted.) *Fortune Bridge Co. v. Dept. of Transp.*, 242 Ga. 531, 532 (250 SE2d 401) (1978).[10]

With regard to the first factor, West apparently concedes that the actual damages caused by a late payment under the lease would be difficult or impossible to accurately estimate. See *Oami v. Delk Interchange, Ltd.*, 193 Ga. App. 640, 641-642 (388 SE2d 706) (1989) (In reviewing a late charge in a lease which provided that

___

[9] At trial the burden is on a defaulting party to show that an alleged liquidated damages provision is actually an unenforceable penalty. Id. In addition, we note that "trial courts should not ordinarily submit the issue of whether a contract provides for liquidated damages or a penalty to the jury. This issue should be decided as a matter of law, unless after applying the usual rules of contract construction, an ambiguity remains warranting submitting a factual issue to the jury." (Citations omitted.) *Roswell Properties, Inc. v. Salle*, 208 Ga. App. 202, 205 (2) (c) (430 SE2d 404) (1993), disapproved of on other grounds by *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 234 (2) (547 SE2d 637) (2001).

[10] See *Southeastern Land Fund, Inc. v. Real Estate World, Inc.*, 237 Ga. at 231 (accord); *Caincare, Inc. v. Ellison*, 272 Ga. App. 190, 195 (612 SE2d 47) (2005) (accord).

19

any overdue rent would bear interest from the due date until paid and that the tenant would pay in addition to interest a service charge of $10 per day, we concluded that the landlord had shown that the injury that would be caused by late payments, that is, having to borrow operating funds at the then-market rate, would be difficult or impossible to accurately estimate "in a market of fluctuating interest rates over a five-year period," the period of the lease.).

With regard to the second factor, the parties' intent to provide for damages versus a penalty, "we ascertain the intent of the parties by first looking to the language of the contract. Although the words used by the parties are not conclusive, they are a significant factor in determining the parties' intent." (Citation and punctuation omitted.) *JR Real Estate Dev., LLC v. Cheeley Inv., L.P.*, 309 Ga. App. 250, 253 (2) (b) (709 SE2d 577) (2011). In this case, we conclude from the words used by the parties that they could have intended Paragraph 27 either as liquidated damages or as a penalty. Because West is appealing the denial of its motion for summary judgment, we must construe all reasonable inferences in favor of NW Parkway. Id. at 254 (2) (b).

As to the third factor, West contends that the late charge, "a one-time" 10 percent charge, cannot be deemed a reasonable pre-estimate of the probable loss

because it is not "adjusted to the length of the tardiness" of the payment. It makes sense that, where a contractual obligation is the payment of money by a specified date, liquidated damages for late payment may reflect the time-value of money. See *Oami v. Delk Interchange, Ltd.*, 193 Ga. App. at 642 (A $10 surcharge for each day of the tenant's failure to pay rent was "adjusted to the length of tardiness" and was a reasonable pre-estimate of the probable loss.). But liquidated damages may also reflect an anticipated increase to an obligee's transaction costs. See *Krupp Realty Co. v. Joel*, 168 Ga. App. 480, 481 (1) (309 SE2d 641) (1983) (Where a lease provided for a $50 charge as "additional rent" either when a rent check was returned from the lessee's bank without payment, which would cause the agent/owner "additional expenses for bookkeeping and clerical services," or when the rent due on the first of the month was received after the fifth, which would require "additional services" of the agent/owner, the trial court erred in finding the charge was usurious.).

Based on the foregoing, we conclude that West failed to show that the late charge is a penalty as a matter of law. Accordingly, the trial court did not err in denying West's motion for partial summary judgment in this regard.

21

4. Based on this Court's holding in Case No. A10A1781, the trial court granted NW Parkway's motion for summary judgment on its Count 1, as to liability only, concluding as a matter of law that West breached the lease by failing to repair or replace the roofs. West appeals the grant of NW Parkway's motion. As NW Parkway contends, however, this issue was resolved in the first appeal.

In that decision, we noted that, although the trial court's declaratory judgment stated that it was not "intended to resolve whether West breached the lease agreement at issue, or what damages, if any, can be recovered for any such breach[,] [n]evertheless, the legal conclusions reached by the trial court affected NW Parkway's rights to recover under the lease." *NW Parkway, LLC v. Lemser*, 309 Ga. App. at 175 (1). In that decision, we determined that West was obligated under Special Stipulation 3 of the lease to replace the roof *and* that West "fail[ed] to comply with the third special stipulation, i.e., fail[ed] to repair the roof[.]" *NW Parkway, LLC v. Lemser*, 309 Ga. App. at 177 (2), 178 (3). Because these rulings were binding in all subsequent proceedings in this case in the lower court, see Division 1, supra, the trial court did not err in granting NW Parkway's motion for summary judgment as to liability on its Count 1.

5. The trial court denied West's motion for summary judgment on NW Parkway's Count 3, attorney fees under OCGA § 13-6-11. West appeals the denial of its motion, contending that, before the first appeal, there was a genuine controversy about whether it was obligated under the lease to replace the roof and that its tender of the roof replacement funds into the court registry precludes a claim of bad-faith performance.

An award of attorney fees and other expenses of litigation is authorized pursuant to OCGA § 13-6-11, where (1) the plaintiff specially pleads and prays for such an award, and (2) the finder of fact finds that the defendant acted in bad faith in the underlying transaction or that, after the transaction on which the cause of action is predicated, the defendant was stubbornly litigious or caused the plaintiff unnecessary trouble and expense. "Questions concerning bad faith under this statute are generally for the jury to decide, and the trial court may grant judgment as a matter of law on such issues only in the rare case where there is absolutely no evidence to support the award of expenses of litigation." (Citation and punctuation omitted.) *Georgia Dermatologic Surgery Centers, P.C. v. Pharis*, 323 Ga. App. 181, 184 (3) (746 SE2d 678) (2013). See *Hewitt Assocs., LLC v. Rollins, Inc.*, 308 Ga. App. 848, 853 (3) (708 SE2d 697) (2011) (accord).

23

This is not such a rare case where there is absolutely no evidence to support the award of expenses of litigation. For example, however willing West might have become later in the litigation to pay the amount for the roof replacement into the registry of the court, a jury could find that West acted in bad faith when it asserted that it was NW Parkway's sole responsibility to replace the roof while at the same time denying NW Parkway access to the property to do so until NW Parkway obtained a TRO. The trial court did not err in denying West's motion for partial summary judgment as to NW Parkway's Count 3. *Georgia Dermatologic Surgery Centers, P.C. v. Pharis*, 323 Ga. App. at 184 (3); *Hewitt Assocs., LLC v. Rollins, Inc.*, 308 Ga. App. at 853 (3).

6. The trial court denied NW Parkway's motion for summary judgment on West's Count 1, fraud and deception. Specifically, West alleged that NW Parkway drafted the lease to include an acknowledgment by the original lessee, Worldwide, that the premises were in good order and repair at the beginning of the lease with knowledge that the roofs were in fact not in good repair and with the intention that West rely on the representation in agreeing to assume the role of tenant as part of its acquisition of Worldwide. NW Parkway appeals the denial of its motion. Under the

24

circumstances presented here, we conclude that the trial court erred in denying NW Parkway's motion for partial summary judgment on West's fraud claim.

Under Georgia law,

[t]he five elements of a fraud claim are: (1) false representation made by defendant; (2) scienter; (3) intention to induce plaintiff to act or refrain from acting in reliance by plaintiff; (4) justifiable reliance by plaintiff; and (5) damage to plaintiff. . . . [A] plaintiff asserting a fraud claim must show not only that [it] relied on some misrepresentation, but also that [its] reliance was reasonable.

(Citations and punctuation omitted.) *Alvear v. Sandy Springs Toyota, Inc.*, 332 Ga. App. 798, 800-801 (1) (775 SE2d 172) (2015). See also OCGA § 51-6-2 (a) ("Willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury, will give him a right of action. Mere concealment of a material fact, unless done in such a manner as to deceive and mislead, will not support an action."). "Concealment of material facts may amount to fraud when . . . the concealment is of intrinsic qualities of the article [at issue] which the other party, by the exercise of ordinary prudence and caution, could not discover; and misrepresentation may be perpetuated by acts as well as words, and by artifices

designed to mislead." (Citation omitted.) *Batey v. Stone*, 127 Ga. App. 81, 82 (192 SE2d 528) (1972).

According to West's own characterization of the facts, "[t]he lease at issue in this lawsuit was not negotiated in an arms-length transaction" between NW Parkway and Worldwide. According to the West executive who led West's due diligence process relating to the acquisition of Worldwide, Frank Hanna was "ultimately" the owner of both NW Parkway, the lessor, and (along with Tye Hanna) Worldwide, the original lessee. In 2004, when Worldwide executed the lease at issue in this case, it had already been occupying the property for two years. West's executive deposed that, "[b]ecause Worldwide was conducting its business operations in the Building, West had no reason to suspect that any defective conditions existed in the Building. West conducted its regular due diligence related to the transaction, but . . . never toured the facility during a rainfall to determine whether the roof had leaking issues." But Worldwide's facilities manager, who continued in that role after West acquired Worldwide, deposed that "[p]rior to the acquisition of Worldwide in 2004, Worldwide's leadership was aware of the significant problems affecting the low roof of the Building." Specifically, part of the roof was replaced in July 2002, and there

were a number of leaks, some "significant," in 2002 and 2003, requiring multiple repairs.

Although, as the trial court noted, reasonable reliance and due diligence are ordinarily questions for the jury,[11] "[t]he law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect is due to indifference or credulity." (Citations and punctuation omitted.) *Miller v. Clabby*, 178 Ga. App. 821, 823 (344 SE2d 751) (1986). When the means of knowledge are at hand and equally available to both parties, such as inspection of real property to be purchased, if one party does not avail itself of the means of discovery, it will not be heard to say later that it was deceived by the other party's representations or lack thereof. Id. Where a sophisticated company is in the process of acquiring another company and assuming that company's obligations under a 20-year triple-net lease; under the lease the acquiring company will be responsible for maintenance and almost all other expenses of the subject property; the acquiring company knows that the lease was not negotiated in an arms-length transaction; and, the lease includes an acknowledgment that the property is in good repair, certainly under such

---

[11] See *Northwest Plaza, LLC (MI) v. Northeast Enterprises, Inc.*, 305 Ga. App. 182, 191 (3) (a) (699 SE2d 410) (2010); *Miller v. Clabby*, 821, 823 (344 SE2d 751) (1986).

27

circumstances the company is on notice of the need to exercise a significant degree of diligence in inspecting the premises. NW Parkway's executive deposed that West had the opportunity to inspect the property and has identified evidence that roof problems were known to West's employees before the execution of the lease. In rebuttal, West has not identified any evidence that NW Parkway prevented it from conducting any inspection it desired, nor any evidence that it would not have discovered the condition of the roof by inspecting them.

Given these facts, we conclude that the trial court erred in denying NW Parkway's motion for partial summary judgment on West's Count 1. *Fowler v. Overby*, 223 Ga. App. 803, 805-806 (1) (478 SE2d 919) (1996) (The seller of a parcel of real property was entitled to judgment on the buyer's fraud claim on the basis that the buyer failed as matter of law to exercise due diligence to discover that the property had been used as a dump; after observing some trash strewn on a portion of the property, the buyer "was certainly put on notice of the possibility" that there was other debris on the rest of the property. "Due diligence in such a case would require a closer inspection than she made of the property," and there was no evidence that she was prevented from inspecting property prior to purchase.) (citations omitted); *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74, 77-78 (441 SE2d 421) (1994) (The

seller of a house was entitled to judgment on the purchaser's fraud claim on the basis that the purchaser failed as matter of law to exercise due diligence to discover fire damage in the attic of the home where she knew the house was in dilapidated condition, she agreed to purchase house in its "as is" condition, such that she was obviously on notice to exercise heightened degree of diligence in inspecting house, the seller did not prevent her from inspecting the attic, and the purchaser failed to inspect the attic.); *Metmor Financial, Inc. v. Jenkins*, 199 Ga. App. 885, 886 (406 SE2d 288) (1991) (A lender could not be held liable in fraud to a buyer of a house for misrepresentations about the condition of the house, where even a cursory visual inspection of property would have revealed the construction deficiencies to the buyer and therefore there could be no justifiable reliance on any misrepresentations.).

7. The trial court denied NW Parkway's motion for summary judgment on West's Count 4, gross negligence in NW Parkway's selection of a vendor to repair the roofs and in its failure to ensure the roofs were installed properly. NW Parkway appeals the denial of its motion.

"Gross negligence" is defined as the absence of slight diligence, that is,

that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar

29

circumstances. As applied to the preservation of property, the term "slight diligence" means that care which every man of common sense, however inattentive he may be, takes of his own property.

OCGA § 51-1-4. In other words, to act with gross negligence is to lack "the diligence that even careless men are accustomed to exercise." (Citation and punctuation omitted.) *Johnson v. Omondi*, 294 Ga. 74, 78 (751 SE2d 288) (2013). "While questions of gross negligence and slight diligence are usually to be determined by a factfinder, courts may resolve them as matters of law in plain and indisputable cases." (Citations omitted.) Id.

In this case, West has not identified any evidence that NW Parkway was indifferent to whether the roofing vendor it selected would do a good job or that it otherwise acted without even slight care when choosing the roofing contractor. In addition West has not identified any evidence that NW Parkway acted without even slight care with regard to the quality of work of its chosen contractor. West simply states, "[t]he question of whether NW Parkway was grossly negligent is . . . plainly for the jury." To oppose a motion for summary judgment, more is required than a bald

30

statement that an issue is generally for the jury.[12] Accordingly, NW Parkway is entitled to judgment as to West's Count 4, and the trial court erred in denying NW Parkway's motion for partial summary judgment in this regard.

*Judgment affirmed in part and reversed in part. Phipps, P. J., concurs. Dillard, Ray and McMillian, JJ., concur in judgment only. Barnes, P.J., and McFadden, J., concur in part and dissent in part.*

---

[12] Where a respondent who will not bear the burden of proof at trial moves for summary judgment and "points out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the [claimant's] case[,]" the claimant "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." (Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. at 623-624 (1) (a).

A15A1830. WEST ASSET MANAGEMENT, INC. v. NW
PARKWAY, LLC.

MCFADDEN, Judge, concurring in part and dissenting in part.

Because our prior opinion does not resolve the issue of West's default, I respectfully dissent in part. In the prior appearance of this case we reversed the trial court's grant of summary judgment in favor of West. The trial court had held as a matter of law that, regardless of the condition of the roofs, West had no duty to replace them. The trial court did not reach, among other things, West's tender defense or West's contention that the roofs could have been repaired rather than replaced. So we did not reach those issues either – nor could we have. It follows that the language in our earlier opinion to the effect that West's failure to repair the roofs constituted default and barred it from exercising the termination clause is not the law of the case.

Consequently, I concur in Division 2 (affirming the grant of summary judgment to West on NW Parkway's claim for rent after December 2012), Division 3 (affirming the denial of summary judgment to West on NW Parkway's claim for late fees), Division 5 (affirming the denial of summary judgment to West on NW Parkway's claim for OCGA § 13-6-11 attorney fees), Division 6 (reversing the denial of summary judgment to NW Parkway on West's fraud claim), and Division 7 (reversing

the denial of summary judgment to NW Parkway on West's gross negligence claim).

But I respectfully dissent from Division 1 (reversing the denial of summary judgment to NW Parkway on its claim for breach and anticipatory breach of the lease) and Division 4 (affirming the grant of summary judgment to NW Parkway on its claim for roof-related expenses).

1. *Law of the case*.

Because there has been an earlier appeal in this case, *NW Parkway, LLC v. Lemser*, 309 Ga. App. 172 (709 SE2d 858) (2011), our analysis begins with the law of the case rule. See OCGA § 9-11-60 (h). Contrary to the majority, I would hold that it is not applicable. "The 'law of the case' has been defined as a controlling legal rule established by a previous decision between the same parties in the same case." *Modern Roofing & Metal Works v. Owen*, 174 Ga. App. 875, 875 (1) (332 SE2d 14) (1985) (citation and punctuation omitted). Accordingly, the law of the case rule applies "only when the same issue has been actually litigated and decided." *State v. Mizell*, 288 Ga. 474, 478 (3) (705 SE2d 154) (2010) (citations omitted).

West filed the motion for summary judgment that we reviewed in the first appearance of this case, *NW Parkway*, 209 Ga. App. at 172. It sought summary judgment on its counterclaim for a declaratory judgment seeking the resolution of

2

"questions of law" regarding the terms of the lease. To the extent that it turned on interpretation of the lease, the matter was a question of law, not fact. See OCGA § 13-2-1 ("The construction of a contract is a question of law for the court."); *Roswell Festival, L.L.L.P. v. Athens Intl.*, 259 Ga. App. 445, 447 (1) (576 SE2d 908) (2003) ("The construction of the provisions of a lease, as with other written contracts, is generally a matter of law for the trial court to determine.").

In September 2009, the trial court granted West's motion, finding that under the lease, West had no obligation to replace the roofs, and that even if West did have such an obligation, NW Parkway waived its rights under the lease by accepting subsequent rent payments from West. *NW Parkway*, 309 Ga. App. at 174-175. But as the trial court acknowledged in the ruling now before us, that September 2009 order "did not adjudicate any facts concerning necessity of replacement. . . ."

We reversed that 2009 opinion, holding that the trial court erred in both rulings. Our opinion makes clear that we were considering questions of law. We wrote, as to interpretation of the lease, "NW Parkway argues that the trial court erred by ruling that West, *as a matter of law,* had no obligation to repair the property's roof." *NW Parkway*, 309 Ga. App. at 175 (2) (emphasis supplied). And on the waiver issue, we wrote that ordinarily, the question of waiver is for jury resolution, but not

3

in the matter before us. Id. at 178 (3). Instead, we held that, as a matter of law, NW Parkway's acceptance of rent did not waive its right to reject West's attempt to terminate the lease at the five-year mark. Id. at 177-178 (3).

The language by which the majority finds us to be constrained comes near the end of our analysis. Having held that the grant of summary judgment to West on that issue could not be sustained on either of the grounds set out in the trial court's 2009 opinion and viewing the evidence in the light most favorable to NW Parkway as the nonmovant, we went on to write that West's "failure to repair the roof[] constituted a default" that would prevent it from timely complying with the early termination clause. Id. at 178 (3). Read in light of the scope of the issues properly before us, that language is correctly understood to mean that the lease *could* still be in effect and that NW Parkway's acceptance of rent was not inconsistent with its intent to insist on West's compliance with the conditions precedent for early termination.

The opinion contained no analysis of whether genuine issues of material fact existed on the issue of default. That issue was not before us. "[A] review of the actual holding reveals that the . . . court never resolved the issue whether" West was in default. *Hicks v. McGee*, 289 Ga. 573, 578 (2) (713 SE2d 841) (2011). Consequently, the law of the case rule does not apply to resolve the issue of whether West was in

4

default. Compare *Choate Constr. Co. v. Auto-Owners Ins. Co.*, 335 Ga. App. 331 (779 SE2d 465) (2015) (prior appellate holding regarding existence of genuine issues of material fact, which precluded summary judgment to one party, was law of the case in subsequent appeal of denial of summary judgment to another party).

I therefore turn to the trial court's grant of summary judgment to NW Parkway on its claim for roof-related expenses, the ruling at issue in the majority's Division 4, and to the trial court's denial of both parties' motions for summary judgment on NW Parkway's claim for breach and anticipatory breach of the lease, the ruling at issue in the majority's Division 1.

2. *Roof-related expenses.*

In its Division 4, the majority affirms the trial court's grant of summary judgment to NW Parkway as to liability on its claim for roof-related expenses. The majority holds that the issue of whether West breached the lease by failing to repair or replace the roofs was resolved in the first appeal. As detailed above, our prior opinion did not resolve the issue of whether West breached the lease. It simply held that, under the terms of the lease, West was obligated – when necessary – to repair and replace the roof. And in the opinion now before us, the trial court acknowledged that questions of fact remained as to "whether, and to what extent the two roofs could

5

have been repaired rather than replaced or. . . whether the lower roof was defectively constructed or would have lasted to the conclusion of West's tenancy." Accordingly, I would reverse the trial court's grant of summary judgment on this issue.

3. *Breach and anticipatory breach*.

The trial court denied the parties' cross motions for summary judgment on NW Parkway's claim for breach and anticipatory breach of the lease, identifying disputed issues of material fact. In Division 1, the majority accurately summarizes the fact issues identified in the trial court's ruling.

> [That] ruling was supported by the court's determination that material questions of fact remain regarding whether West satisfied the conditions for terminating the lease at the end of the first five-year interval. In particular, the trial court determined that there is a jury questions regarding West's tender defense, that is, that West's tender of the roof-related expenses, by moving to deposit $384,226 into the registry of the court, was sufficient to defeat NW Parkway's claim that West breached the lease by failing to replace the roof. An alternative basis for the denial of summary judgment on NW Parkway's Count 2 as the court's determination that material questions of fact remain regarding whether a surrender took place as of January 2010, that is, whether NW Parkway took actions incompatible with the continued existence of West's leasehold after that date.

6

Notwithstanding all of that, the majority finds us constrained to reverse by the language of our prior opinion. I would affirm. Whether West breached its obligation to repair or replace the roof is a question of fact. And as detailed above, that language is not the law of the case and we are not bound by it. Even if West breached the lease, whether its tender was sufficient to cure the breach, prevent default, and allow it to invoke its right to early termination depends – as the trial court held – on disputed questions of fact.

I am authorized to state that Presiding Judge Barnes joins me in concurring in part and dissenting in part.