**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2013**

# In the Court of Appeals of Georgia

A13A0266. GEORGIA DERMATOLOGIC SURGERY CENTERS, P.C. v. PHARIS

RAY, Judge.

David B. Pharis, M.D. ("Pharis") filed a complaint against Georgia Dermatologic Surgery Centers, P.C. ("GDSC") asserting a claim for breach of contract/wrongful termination. Pharis also sought to compel the redemption of his shares of stock in GDSC and to recover attorney fees and expenses of litigation. On the parties' cross-motions for summary judgment, the trial court denied GDSC's motion for summary judgment and granted Pharis' motion for partial summary judgment on the issue of GDSC's liability for breach of contract/wrongful termination. GDSC appeals from the trial court's ruling on these cross-motions for summary judgment. For the following reasons, we affirm.

"We review a grant of summary judgment de novo, and we view the evidence in a light most favorable to the nonmovant." (Footnote omitted.) *Silver Pigeon Properties, LLC v. Fickling & Co.,* 316 Ga. App. 167, 167 (728 SE2d 801) (2012).

So viewed, the evidence shows that GDSC is equally owned by Pharis and Dr. Mark Baucom. Baucom and Pharis are the sole two directors of GDSC, each having one director's vote apiece. Baucom and Pharis are also the sole officers of GDSC, with Baucom serving as president and Pharis serving as vice-president, secretary, and treasurer. Baucom and Pharis, as GDSC's only directors and shareholders, approved identical employment contracts and entered into those contracts with GDSC. At all times relevant to this case, Baucom and Pharis jointly operated GDSC as its equal owners, directors, officers, and key physician-employees.

On October 26, 2010, Baucom, in his capacity as president of GDSC, notified Pharis that his employment with GDSC was terminated for cause. Baucom did not call a meeting to seek or obtain the approval of GDSC's directors or shareholders before he unilaterally decided to terminate Pharis. 1. GDSC contends that the trial court erred in granting Pharis' motion for partial summary judgment on his claim for breach of contract/wrongful termination. In its ruling, the trial court found that the termination of Pharis was an act which fell outside the scope of Baucom's authority

as president and, therefore, it required the approval of GDSC's board of directors. In resolving this issue, we must look at the relevant governing documents of GDSC.

The shareholders' agreement provides that the termination of a shareholder's employment constitutes a "Sale Event" which requires the sale of the terminated employee/shareholder's shares to the corporation. Although the shareholders' agreement provides that upon occurrence of any "Sale Event" the terminated employee/shareholder shall be deemed to have resigned as an officer and/or director of GDSC, the shareholders' agreement is silent as to who makes the determination as to whether a "Sale Event" has occurred. The shareholders' agreement provides that the president's authority is limited to conducting the "day-to-day operations" of the corporation and that the functions of the president shall be set forth in the bylaws.

The bylaws provide that the directors shall be elected at the shareholders' annual meeting and that the removal of a director during his term requires a special meeting of the shareholders called for that purpose. The bylaws provide that the president, vice-president, secretary, and treasurer shall be elected by the board of directors, and that such officers may only be removed or terminated by the board of directors. The bylaws further provide that the business and affairs of the corporation shall be managed by the board of directors, and that the president "shall have general

3

and active management of the business of the [c]orporation and shall see that all orders and resolutions of the [b]oard of [d]irectors are carried into effect."

When the above provisions of the shareholders' agreement and bylaws are read together, it appears that only the shareholders and board of directors have the authority to terminate the employment of an employee/shareholder who is also a director and officer of the corporation. As noted above, Baucom and Pharis were equal 50 percent shareholders, equal directors, and board-elected officers, and both were employees of GDSC. Under these unique circumstances, the termination of Pharis would be an extraordinary act which falls well outside the authority of the president to conduct the day-to-day operations of GDSC.

Although we can find no authority in Georgia directly on point, we find persuasive authority in *Fournier v. Fournier*, 479 A.2d 708, 711-712 (I) (R. I. 1984). In *Fournier*, the Supreme Court of Rhode Island held that a corporate president's general authority to manage the day-to-day operations of the corporation did not include the authority to terminate an employee who was also an owner, director, and officer of the corporation. Similarly, in Georgia, we have held that a president's general authority to manage the day-to-day affairs of the corporation did not include the power to file a lawsuit on behalf of the corporation against a 50 percent

shareholder. See *Glisson Coker, Inc. v. Coker*, 260 Ga. App. 270, 270-272 (1) (581 SE2d 303) (2003). Under the reasoning in *Fournier* and *Glisson*, we find that the general grant of authority given to Baucom as president of GDSC did not give him the power to terminate Pharis.

Although GDSC claims that Baucom had the authority to terminate Pharis as an employee because he signed Pharis' employment agreement on behalf of GDSC, the evidence shows that GDSC's authority to enter into the Pharis' employment agreement came from the board of directors and shareholders (Baucom and Pharis), who unanimously approved their own employment contracts. Therefore, when Baucom signed Pharis' employment agreement, he was simply carrying out the order of GDSC's board of directors. The evidence also shows that GDSC has only terminated three employees in the past, and in each instance, Baucom and Pharis, as directors, approved the termination of those employees.

Under OCGA § 14-2-843 (b), as well as GDSC's bylaws, only the board of directors has the power to remove an officer whom the board elected. GDSC terminated Pharis without a meeting of the board of directors and without obtaining board approval. Under the corporate bylaws, a director may be removed during his term only upon a special meeting of the shareholders called for that purpose. GDSC

5

terminated Pharis without a meeting of the shareholders. We note that had the shareholders and board of directors (Baucom and Pharis) met to consider Pharis' termination, such a meeting would have most certainly resulted in a deadlock with a 1-to-1 vote. However, this did not excuse GDSC from adhering to its governing documents and to OCGA § 14-2-843 (b). Moreover, Baucom and GDSC are not left without a remedy, as Baucom may seek a judicial dissolution of GDSC under OCGA § 14-2-1430 (2) (A).

For the above reasons, the trial court was correct in ruling that Baucom lacked the authority as president to unilaterally terminate Pharis' employment.

2. In its second enumeration of error, GDSC contends that the trial court erred in denying its motion for summary judgment on Pharis' claim to compel redemption of shares of stock. Based on our holding in Division 1, this enumeration is moot.

3. In its final enumeration of error, GDSC contends that the trial court erred in denying its motion for summary judgment regarding Pharis' claim for attorney fees and expenses under OCGA § 13-6-11. "Questions concerning bad faith under this statute are generally for the jury to decide, and the trial court may grant judgment as a matter of law on such issues only in the rare case where there is absolutely no evidence to support the award of expenses of litigation." (Citation and punctuation

6

omitted.) *Hewitt Assocs., LLC v. Rollins, Inc.*, 308 Ga. App. 848, 853 (3) (708 SE2d 697) (2011). As Pharis was terminated wrongfully and without authority, and because there is evidence from which a jury could find that GDSC acted in bad faith and has been stubbornly litigious, the trial court properly denied GDSC's motion on this claim.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*