**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 14, 2016**

# In the Court of Appeals of Georgia

A16A1331. GEORGIA DERMATOLOGIC SURGERY CENTERS, P. C. v. PHARIS.

ELLINGTON, Presiding Judge.

A Fulton County jury awarded David B. Pharis, M.D. $1,300,000 in damages in his claim against Georgia Dermatologic Surgery Centers, P. C. ("GDSC") for breach of contract. On appeal, GDSC contends that because this Court in *Georgia Dermatologic Surgery Centers, P. C. v. Pharis*, 323 Ga. App. 181 (746 SE2d 678) (2013) ("*GDSC I*") affirmed the trial court's ruling that GDSC's termination of Pharis's employment contract was void and of no legal effect, the trial court erred in conducting a trial based on the presumption that GDSC had breached Pharis's employment contract. In addition, GDSC contends that the trial court erred in (i) disallowing the introduction of GDSC's shareholders' agreement, (ii) unilaterally

redacting portions of the employment agreement, and (iii) allowing Pharis to recover as damages expenses paid by his professional corporation, a separate legal entity. For the reasons set forth below, we affirm in part and reverse in part.

Pharis sued GDSC asserting, inter alia, a claim for "breach of contract/wrongful termination."[1] Pharis moved for partial summary judgment and GDSC filed a cross-motion for summary judgment. The trial court granted Pharis's motion for partial summary judgment on the issue of liability on Pharis's breach of contract claim and denied GDSC's motion for summary judgment. GDSC appealed the trial court's ruling on the cross-motions for summary judgment, and this Court affirmed the trial court's order in *GDSC I*. After a trial on damages, a jury awarded $1,300,000 to Pharis on his breach of contract claim. GDSC filed a notice of appeal from the judgment entered on the jury's verdict.

The facts underlying the dispute are set forth in *GDSC I*:

GDSC is equally owned by Pharis and Dr. Mark Baucom. Baucom and Pharis are the sole two directors of GDSC, each having one director's vote apiece. Baucom and Pharis are also the sole officers of GDSC, with Baucom serving as president and Pharis serving as vice president,

---

[1] Pharis also asserted claims to compel redemption of stock and for attorney fees, see *GDSC I*, 323 Ga. App. at 181, but he withdrew those claims before trial.

2

secretary, and treasurer. Baucom and Pharis, as GDSC's only directors and shareholders, approved identical employment contracts and entered into those contracts with GDSC. At all times relevant to this case, Baucom and Pharis jointly operated GDSC as its equal owners, directors, officers, and key physician-employees. On October 26, 2010, Baucom, in his capacity as president of GDSC, notified Pharis that his employment with GDSC was terminated for cause. Baucom did not call a meeting to seek or obtain the approval of GDSC's directors or shareholders before he unilaterally decided to terminate Pharis.

323 Ga. App. at 182. In *GDSC I*, we considered the trial court's ruling that "the termination of Pharis was an act which fell outside the scope of Baucom's authority as president and, therefore, it required the approval of GDSC's board of directors." Id. at 182 (1). We held that the trial court was correct in ruling that Baucom lacked the authority as president to unilaterally terminate Pharis's employment and affirmed its grant of Pharis's motion for partial summary judgment on the issue of GDSC's liability on his claim for breach of contract. Id. at 182-184 (1).

1. GDSC contends that it did not breach Pharis's employment contract as a matter of law. Specifically, GDSC argues that the trial court determined in its summary judgment ruling, which this Court affirmed in *GDSC I*, that Baucom lacked the authority to unilaterally terminate his employment and that Baucom's attempted

3

termination was an ultra vires act that was void and of no legal effect. Based on this determination, the trial court ordered that Pharis be reinstated as an employee and officer of GDSC. Because the termination of Pharis's employment never occurred, as a matter of the law of the case, GDSC contends that it cannot be held liable for breaching the contract by terminating his employment and, it follows, cannot be held liable for any damages for a breach of contract that did not happen. GDSC asserts that the trial court erred in conducting the trial to determine the amount of damages based on the presumption that GDSC had breached Pharis's employment contract, because any damages Pharis sustained were due to Baucom's ultra vires conduct, which is not attributable to GDSC.

GDSC has not shown that the trial court, having entered judgment on the issue of liability on Pharis's breach of contract claim, and after having its judgment affirmed on appeal, erred in conducting a trial on the issue of damages. GDSC does not set forth any relevant legal argument on appeal to support its assertion that, in light of the ultra vires acts of Baucom, GDSC could not have breached the employment contract. The trial court's reinstatement of Pharis and its finding that Baucom lacked authority to terminate Pharis is not inconsistent with its holding that GDSC was liable on Pharis's breach of contract claim. The gravamen of Pharis's

4

claim against GDSC was that Baucom lacked authority to dismiss him, but that, following Baucom's actions, GDSC breached the employment contract by precluding Pharis from returning to work and failing to pay him the compensation owed to him thereunder.

The record also shows that, following the issuance of this Court's remittitur in *GDSC I* and the Georgia Supreme Court's denial of GDSC's petition for certiorari, GDSC argued to the trial court that it could not be held be liable for Baucom's unauthorized acts.[2] GDSC could not, however, relitigate the issue of its liability. "[I]t is the duty of each party at the hearing on the motion for summary judgment to present his case in full." (Citation omitted.) *Summer-Minter & Assoc. v. Giordano*, 231 Ga. 601, 604 (203 SE2d 173) (1974). "[W]e cannot . . . permit a defendant to utilize a new defense following a ruling on summary judgment in plaintiff's favor as to liability." (Citation and punctuation omitted.) *Martin v. Hamilton State Bank*, 323 Ga. App. 185, 189 (1) (746 SE2d 750) (2013). See *Intl. Indem. Co. v. Reeves*, 170 Ga. App. 391, 392 (1) (317 SE2d 234) (1984) (declining to address the merits of an argument as to appellant's liability which the appellant raised for the first time after

---

[2] GDSC argued that it could not be held liable for Baucom's acts because he had neither actual nor apparent authority to terminate Pharis. GDSC could have raised this same argument in opposing Pharis's motion for partial summary judgment.

this Court affirmed on appeal an order granting summary judgment on the issue of liability on another basis). We find no error.

2. GDSC claims that the trial court erred in excluding the shareholders' agreement among GDSC, Pharis, and Baucom. The trial court granted Pharis's motion in limine to exclude evidence of the shareholders' agreement, and, in particular, evidence and argument as to the "stipulated value" of the shares. "A motion in limine is properly granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial." (Citation and punctuation omitted.) *Pribeagu v. Gwinnett County*, 336 Ga. App. 753, 754 (785 SE2d 567) (2016). We review the trial court's ruling for abuse of discretion. Id.

Under the employment contract, Pharis agreed "to practice medicine solely as an employee of [GDSC]" and "to devote [his] entire professional clinical time, attention and energies" to GDSC's business. Pharis was compensated by GDSC with a base salary plus quarterly distributions based on the total amount of collected cash net receipts attributable to his services, less certain expenses including his base salary. Pharis sought to recover as damages his earnings lost as a result of GDSC's breach of his employment contract, as mitigated and lessened by the earnings he

6

generated by opening his own medical practice.[3] He also sought to recover expenses incurred in opening that practice.

As well as being a GDSC employee, Pharis was a 50 percent shareholder of the professional corporation. Pharis entered into a shareholders' agreement with GDSC and Baucom, also a 50 percent shareholder, on the same date as the employment agreement. In the shareholders' agreement, the parties acknowledge that Pharis and Baucom had entered into employment agreements with GDSC that set forth restrictive covenants in the event of termination. GDSC, Pharis, and Baucom also agreed to a procedure for the purchase by GDSC of Pharis's and Baucom's shares in the event their respective employment agreements were terminated, and the parties defined a stipulated value of the shares as the purchase price upon such termination.[4]

---

[3] In a breach of contract action, the measure of damages "is the amount which will compensate the injured party for the loss which a fulfillment of the contract would have prevented or the breach of it entailed." (Punctuation and footnote omitted.) *Goody Prods. v. Dev. Auth. of Manchester*, 320 Ga. App. 530, 539 (3) (a) (740 SE2d 261) (2013). Thus, "[t]he injured party, insofar as it is possible to do so with a monetary award, is to be placed in the position he would have been in had the contract been performed." (Citation omitted.) *Oasis Goodtime Emporium I v. Cambridge Capital Group*, 234 Ga. App. 641, 645 (4) (507 SE2d 823) (1998).

[4] The shareholders' agreement provided that, in the event of employment termination, the stipulated purchase price of the shares "shall be equal to the Selling Shareholder's Accounts Receivable (as . . . defined [in the agreement]) as reported by the Company's regularly retained accountant." "Accounts Receivable" was

GDSC contends that inasmuch as Pharis's employment agreement and the shareholders' agreement was entered into on the same day and were meant to be read together, the shareholders' agreement was relevant to show all of the terms of the parties' relationship. In particular, GDSC maintains that the agreed-upon stipulated value of Pharis's shares was intended "to have served as a measure of damages in the event [he] left the practice." However, the shareholders' agreement provides for the payment of the stipulated value of the shares upon termination "under Section 3.1 of the Employment Agreement." Pharis's employment was not validly terminated for any of the reasons contemplated by the employment agreement. Rather, GDSC attempted to terminate Pharis for cause but that action was taken without proper authority, as we determined in *GDSC I*. See 323 Ga. App. at 184 (1). Under the plain language of the shareholders' agreement, the parties did not agree that the repurchase price of GDSC shares would serve as the measure of damages in the event that GDSC breached the employment agreement. See OCGA § 13-6-7 ("If the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated

defined as "those accounts receivable relating to the Selling Shareholder's medical services collected by the Corporation over the twelve (12) month period following the Sales Event [defined as including termination of a shareholder's employment agreement], less a collection service charge equal to eighty (80%) of the amounts collected during such twelve month period."

8

and, unless the agreement violates some principle of law, the parties are bound thereby."); *2010-1 SFG Venture LLC v. Lee Bank & Trust Co.*, 332 Ga. App. 894, 906 (3) (b) (775 SE2d 243) (2015) ("A liquidated damages provision is an agreement between the parties to limit recovery for a breach of the contract to a specified amount.") (footnoted omitted). The trial court was authorized to conclude that the shareholders' agreement, in the context of the trial on the issue of damages for breach of the employment agreement, was not relevant, and did not abuse its discretion in excluding it. See, e.g., *Dept. of Transp. v. Taylor*, 264 Ga. 18, 21 (3) (c) (440 SE2d 652) (1994) ("The trial court did not err when it granted [the] motion in limine excluding evidence which was not relevant to [the plaintiff's] recoverable damages.").

3. GDSC contends that the trial court erred in unilaterally redacting portions of the employment agreement after it had been admitted into evidence. Exhibit A to the employment agreement set forth the parties' agreement as to Pharis's compensation. Thereunder, Pharis was entitled to quarterly distributions "based on calender year quarters."[5] The exhibit also contained the following language:

---

[5] The quarterly distributions were "equal to the result of: (i) Employee's Net Receipts *minus* (ii) Employee's share of Overhead *minus*, (iii) Employees Allocated Expenses *minus* (iv) Employee's [base] salary ($37,500 per quarter). If a positive

> Notwithstanding [other provisions of Exhibit A], in the event Employee's employment with Employer is terminated for any reason, whether voluntary or involuntary, Employer shall calculate and pay, on or about the date of such termination, a quarterly distribution to Employee in accordance with these provisions, except that a short quarter, rather than a full quarter shall be used, with such short quarter beginning on the first (1st) day of the quarter in which such termination of employment occurs and ending as of the close of business on the date of such termination of employment.

At the pre-trial conference, GDSC's counsel, after reading the provision quoted above aloud to the trial court, argued that it constituted "the sole remedy for GDSC for termination under this contract." The trial court disagreed, finding that "none of those conditions of termination apply" because Pharis was not lawfully terminated, as decided in *GDSC I*. On the morning of trial, GDSC's counsel indicated that he would nevertheless argue to the jury that Pharis was only entitled to his last quarterly distribution. The trial court told counsel "you will not argue that [Pharis is] only limited to walk away with what that last provision states."

The employment agreement was tendered by Pharis at trial and admitted without objection. Before the employment agreement was submitted to the jury, the

number results, Employer shall pay such amount as the quarterly distribution for said quarter."

trial court ordered that the above-quoted provision of the employment agreement be redacted. GDSC characterizes the provision as the liquidated damages Pharis would be entitled to recover under the employment agreement were he to be terminated with or without cause. GDSC argues that, because Pharis attached the employment contract to his complaint and tendered the entire agreement into evidence, he admitted the entire contract was relevant and that the trial court erred in keeping "a crucial portion" of that contract away from the jury.

The provision at issue does not address or limit damages for a breach of the employment contract. Rather, it provides for a pro-rated payment of compensation based on a "short quarter," which would allow the employee to be compensated for the work performed on GDSC's behalf through the termination of employment. See *Royal Crown Cos. v. McMahon*, 183 Ga. App. 543, 545 (2) (359 SE2d 379) (1987) (Liquidated damages analysis was inapplicable as the severance pay agreement at issue did not purport to be a stipulated sum for damages for a breach.). As the provision was not relevant to the issue of damages for the breach of the employment contract, the trial court did not abuse its discretion in sua sponte excluding the provision from the jury's consideration. See, e. g., *Farley v. State*, 145 Ga. App. 98, 103 (5) (243 SE2d 322) (1978) (Questions of relevancy, materiality or competency

11

are for the trial court, and this extends to the power of the court to exclude inadmissible evidence upon its own motion.). Compare *Rabun v. Wynn,* 209 Ga. 80, 82-83 (6) (70 SE2d 745) (1952) (Although a trial judge may on his own motion exclude or strike out evidence which is incompetent or inadmissible, the trial court erred in sua sponte excluding material and relevant evidence.). Accordingly, we find no merit in this claim of error.

4. Lastly, GDSC contends that the trial court erred in failing to treat Pharis and his incorporated medical practice, David P. Pharis, P. C. ("the PC"), as separate legal entities.[6] Because of this error, GDSC asserts, Pharis was improperly allowed to recover, over GDSC's motion for directed verdict, start-up costs incurred by the PC in establishing Pharis's medical practice. A directed verdict is proper only when "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict." (Citations and punctuation omitted.) *The Corps Group v. Afterburner, Inc.*, 335 Ga. App. 138, 139 (779 SE2d 383) (2015). We review a trial court's denial of a motion

---

[6] In this section of its appellate brief, GDSC contends that the trial court also erred in failing to treat GDSC and Baucom as separate legal entities. In essence, GDSC repeats its argument that it could not be held liable for actions taken by Baucom without corporate authority.

for directed verdict under the "any evidence" standard. See *Dagne v. Schroeder*, 336 Ga. App. 36, 40 (3) (783 SE2d 426) (2016). Thus, "so long as there is some evidence to support the jury's verdict, it must be upheld on appeal." (Citation and punctuation omitted.) Id.

Pharis sought to recover as damages the expenses incurred in opening up his new medical practice on the theory that, but for GDSC's breach of his employment contract, he would not have incurred the expenses, and because the expenses were reasonably incurred in order to mitigate and lessen his damages. See Restatement (Second) of Contracts, § 347, comment (c) ("Incidental losses," which, like any other loss actually suffered, are recoverable, "include costs incurred in a reasonable effort, whether successful or not, to avoid loss[.]"); Joseph Perillo, *Calamari and Perillo on Contracts* § 14.17, pp. 588-589 (5th ed. 2003) (expenses incurred in a reasonable effort to mitigate damages may be recoverable as damages).[7] At the close of Pharis's case, GDSC moved for a directed verdict on Pharis's claim for start-up expenses on

---

[7] See also John K. Larkins, Jr., *Georgia Contracts: Law and Litigation* § 12.30 (2d. ed.) (database updated October 2016) ("[E]xpenses reasonably and necessarily expended in an effort to reduce damages may themselves be claimed as damages by either the plaintiff or defendant.").The jury was also charged that "[e]xpenses reasonably and necessarily expended in an effort to lessen damages may themselves be claimed as damages."

the ground that the evidence showed that those costs were paid by the PC, which was not a party to the case. The trial court denied the motion, commenting that Pharis and the PC are "one and the same as a matter of . . . liability law." As part of its special verdict, the jury awarded Pharis $283,321 in damages "for start-up expenses."

The evidence showed that the $283,321 at issue were costs incurred by the PC in the course of opening the business where Pharis resumed his medical practice after GDSC breached the employment contract. Specifically, the evidence showed that of the $283,321 in costs, $273,321 was attributable to the PC's purchase of depreciable assets, primarily medical equipment, and the remaining $10,000 was attributable to the legal costs of organizing the PC. "[A] cardinal precept of corporate law is that corporations are separate legal entities from their shareholders, officers, directors, and employees even in the situation in which a corporation is owned solely by one person." (Citation and punctuation omitted.) *Cobra 4 Enterprises v. Powell-Newman*, 336 Ga. App. 609, 612 (785 SE2d 536) (2016). See *Jerry Dickerson Presents, Inc. v. Concert/Southern Chastain Promotions*, 260 Ga. App. 316, 326 (2) (c) (579 SE2d 761) (2003) ("A corporation and even its sole owner are two separate and distinct persons.") (punctuation and footnote omitted). Thus, funds expended by the PC to establish the medical practice were not expended by Pharis. Rather, they were funds

paid by a non-party with no standing to complain of the breach of contract at issue. "The elements for a breach of contract claim in Georgia are (1) the breach and the (2) *resultant damages* (3) *to the party who has the right to complain* about the contract being broken." (Citation and punctuation omitted; emphasis in original) *Canton Plaza, Inc. v. Regions Bank, Inc.*, 315 Ga. App. 303, 306 (1) (732 SE2d 449) (2012). Pharis suggests that, at the least, he could have recovered as damages $110,000 in his personal savings that he contributed to the PC. But even if the PC used those funds to pay for start-up costs, Pharis made a capital contribution to the corporation; he did not pay the start-up costs. Rather, the costs were paid by the PC and inured to the PC's benefit, largely in the form of equipment. Accordingly, we find that the trial court erred in allowing the jury, over GDSC's motion for directed verdict, to award Pharis costs incurred by the PC in establishing its business. The judgment is reversed in part, and the trial court is instructed to deduct the amount awarded on Pharis's claim for start-up expenses ($283,321, as set forth in the jury's special verdict) , but the judgment is otherwise affirmed. See *Redmon v. Daniel*, 335 Ga. App. 159, 163 n.5 91) (779 SE2d 778) (2015) ("[A] party who moved for a directed verdict as to a specific claim will be entitled to judgment as a matter of law on that claim if [it] prevails on [its] argument on appeal that the evidence is insufficient to support the

verdict as to that claim.") (citation and punctuation omitted). See also *Morris v. Bonner*, 183 Ga. App. 499, 501 (3) (359 SE2d 244) (1987) ("[W]here the jury finds damages in an amount which exceeds that which is authorized by the evidence it is not necessary to grant a new trial if the erroneous amount can be accurately measured and deducted from the verdict.") (citation and punctuation omitted).

*Judgment affirmed in part and reversed in part. Branch and Mercier, JJ., concur.*