**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 2, 2023**

# In the Court of Appeals of Georgia

A23A1042, A23A1043. THINK DEVELOPMENT SYSTEMS, INC. v. CLOUDIOUS, LLC; and vice versa.

MERCIER, Judge.

Following a business dispute, Cloudious, LLC ("Cloudious") sued Think Development Systems, Inc. ("Think Development") for breach of contract, money had and received, breach of fiduciary duty, punitive damages, and attorney fees. Think Development answered and counterclaimed, asserting claims for breach of contract, money had and received, unjust enrichment, and attorney fees. Cloudious subsequently moved for summary judgment on its claims and Think Development's counterclaims.

The trial court granted summary judgment to Cloudious on its breach of contract and breach of fiduciary duty claims, as well as on Think Development's

counterclaim for attorney fees. As to all other claims, it denied summary judgment. The trial court also denied Cloudious's motion to strike an affidavit filed by Think Development.

In Case No. A23A1042, Think Development appeals the grant of summary judgment to Cloudious. Cloudious cross-appeals in Case No. A23A1043, challenging the trial court's decision to (1) deny its motion to strike, and (2) deny its motion for summary judgment on Think Development's substantive counterclaims.[1] For reasons that follow, we reverse the trial court's ruling in Case No. A23A1042, and we affirm in part and reverse in part the ruling in Case No. A23A1043.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). We review a trial

---

[1] Citing the interlocutory nature of the rulings challenged by Cloudious, Think Development argues that we cannot consider the cross-appeal because Cloudious failed to follow the procedures for interlocutory appellate review. We disagree. As a cross-appellant, Cloudious can "present for adjudication on the cross appeal all errors or rulings adversely affecting" it. OCGA § 5-6-38 (a); see also *Ga. Dept. of Transp. v. Strickland*, 279 Ga. App. 753, 755-756 (3) (632 SE2d 416) (2006) (cross-appellant may seek "review of an interlocutory matter so long as the main appeal is properly before us").

court's summary judgment ruling de novo, construing the evidence and all reasonable inferences in favor of the nonmoving party. See *Wright v. Cofield*, 317 Ga. App. 285, 285 (730 SE2d 421) (2012).

So viewed, the record shows that Pulukottil Joy is the President and CEO of Think Development, a staffing service that places consultants with other businesses. In March 2006, Think Development entered into a service agreement with Cognizant Technology Solutions ("CTS") to provide computer programming and technology consultants to CTS. The agreement was updated in 2012 to include, among other things, references to CTS's "vendor qualification and due diligence processes," which Think Development was required to meet.

In 2016, Cloudious, another staffing and consulting service, approached Think Development about purchasing the CTS contract. Joy met with Cloudious's sole shareholders, Pascal Vinoth and Subash Yammada, who stated that they had contacts within CTS and could substantially grow the existing staffing relationship. Recognizing that his current business with CTS was minimal, Joy agreed to sell Think Development's interest in the CTS service contract to Cloudious pursuant to an asset sales agreement ("ASA") drafted by Yammada. As part of the sale, Cloudious agreed to pay Think Development:

3

(a) One Hundred Thousand Dollars ($100,000.00).

(b) 15% of the Gross Margin for proceeds of the contract during First Year. The payment is due half yearly.

(c) 10% of the Gross Margin from the proceeds of the contract during Second Year. The payment is due half yearly.

(d) 10% of the Gross Margin from the proceeds of the contract during Third Year. The payment is due half yearly.

The parties executed the ASA on November 7, 2016, at which point the service agreement between Think Development and CTS was to be transferred to Cloudious. To this end, Vinoth prepared a letter for Joy to send to CTS, stating:

This Letter shall confirm and ratify that, [Think Development] and Cloudious LLC have combined together as of today. Effective immediately, our combined firm will begin conducting its practice as Cloudious LLC. The merger is a joining of two extraordinary firms very similar in size and culture, with practice strengths that are highly complementary and will enable us to provide a new and broader set of services to you. We look forward to discussing those in more depth with you.

. . .

> We request you to transfer our existing [service agreement] to Cloudious LLC.[2]

Joy sent the letter, and Vinoth assured Joy that because Vinoth had contacts within CTS, he would take over "everything from the inside." As Cloudious began making installments on the $100,000 payment, Joy anticipated that Think Development would have no further involvement in the CTS service agreement other than "receiving a percentage of the gross proceeds as set forth in the ASA." CTS, however, did not recognize Cloudious as an approved vendor until the end of 2018, impeding the transfer of the service agreement and preventing Cloudious from directly accessing CTS's portal to place, manage, and obtain payment for its consultants.

---

[2] We have found no evidence that Think Development and Cloudious merged their operations. The ASA, which addressed only the sale of the CTS service agreement, specifically excluded from the sale "[a]ll other assets owned and/or used by [Think Development]." Notably, the 2012 service agreement between Think Development and CTS prohibited assignment or transfer of the agreement without the prior written consent of the other party. The agreement also provided, however, that "no such consent shall be necessary for such an assignment [or] transfer . . . by either party . . . to any entity that succeeds to the [CTS] business by purchase, merger, consolidation or other corporate transfer."

During the 2016 to 2018 time period, Think Development contacted CTS numerous times to expedite the transfer process. In the interim, Think Development and Cloudious agreed "that Cloudious would receive the benefit of [Think Development's] relationship with [CTS] until Cloudious qualified as a [CTS] vendor and the terms of the ASA could be put into effect." In exchange for an administrative fee, Think Development agreed to facilitate the placement of Cloudious-managed consultants at CTS, sign off on purchase orders for their work, and present their time sheets to CTS for payment. CTS paid Think Development for the consulting work, and, according to Joy, Think Development remitted payment to Cloudious as follows:

> The process we initiated was that, except for the deduction towards the FIFTEEN percent (15%) we deducted from the gross proceeds received from [CTS], and the ONE Dollar ($1.00) for each billed hour reflected in the invoice we charged as an administrative fee, Cloudious receive[d] the remainder of the funds paid by [CTS] to [Think Development]. This is what we did for the seventeen (17) month period this process was in place, [and] Cloudious never complained or questioned the distribution of funds, or [Think Development] taking a percentage of the profits.

> . . .

> Under this interim arrangement, it was never contemplated that [Think Development] would simply transfer the funds paid by [CTS] to [Think

6

Development] directly to Cloudious and Cloudious never made such a demand for such payment during this period[.]

After CTS approved Cloudious as a qualified vendor in late December 2018, Cloudious began receiving payments directly from CTS. Joy testified by affidavit that "Cloudious not only did not pay [Think Development] the agreed percentage of the funds received from [CTS] [as outlined in the ASA], Cloudious claimed for the first time that [Think Development] owed [Cloudious] funds." A dispute arose, as Cloudious asserted that Think Development was required, but failed, to forward to Cloudious "all payments [Think Development] received from [CTS]" following execution of the ASA.

In January 2019, Cloudious demanded that Think Development pay it over $500,000, the amount that, according to Cloudious, Think Development improperly retained from the CTS payments. When Think Development failed to remit this sum, Cloudious sued Think Development, alleging that Think Development breached the ASA by retaining the CTS payments, unjustly refused Cloudious's demands for payment, and breached its fiduciary duty to Cloudious by withholding payment. Think Development answered and counterclaimed, asserting that Cloudious breached the ASA by refusing to pay sums owed to Think Development and also failed to pay

Think Development for Think Development-employed consultants that Cloudious placed with CTS.

Cloudious moved for summary judgment on its claims and Think Development's counterclaims, arguing that no genuine issues of material fact remained. It also moved to strike the affidavit filed by Joy. The trial court refused to strike the affidavit and denied the motion for summary judgment on Think Development's substantive counterclaims. But it granted Cloudious summary judgment on its claims for breach of contract and breach of fiduciary duty, concluding that Think Development breached its obligations to Cloudious by failing to immediately transfer the CTS service agreement and by not remitting to Cloudious all payments made by CTS. The trial court also granted Cloudious summary judgment on Think Development's request for attorney fees and litigation expenses pursuant to OCGA § 13-6-11. These cross-appeals followed.

*Case No. A23A1042*

1. In several claims of error, Think Development argues that the trial court erred in granting Cloudious summary judgment on Cloudious's breach of contract and breach of fiduciary duty claims. We agree.

8

(a) The trial court found that, as a matter of law, Think Development breached the ASA because Think Development warranted that it had the ability to immediately transfer the CTS service agreement to Cloudious, but was unable to do so. It is true that, through the ASA, Think Development agreed that it had taken all necessary steps to consummate the sales transaction, that the CTS service agreement would be transferred and assigned to Cloudious at the closing of the sale, and that the service contract would at that time be "in full force and effect." The parties learned, however, that Cloudious could not fully take over the contract until it had been approved as a vendor by CTS. Joy averred that once this issue became clear, Think Development and Cloudious agreed to alter their business relationship until Cloudious received its vendor approval and the "terms of the ASA could be put in effect." According to Joy, the parties proceeded under this modified relationship, with Think Development making all submissions to CTS pending Cloudious's vendor approval, and Cloudious accepting Think Development's work on Cloudious's behalf.

"[W]aiver of a contract provision may be express, or may be inferred from actions, conduct, or a course of dealing." *Yash Solutions v. New York Global Consultants Corp.*, 352 Ga. App. 127, 133 (1) (a) (834 SE2d 126) (2019) (citation and punctuation omitted). "[W]hether the parties' mutual conduct caused a waiver

9

and effected a quasi-new agreement ordinarily is a question for the jury." *Vakilzadeh Enterprises v. Housing Auth*., 281 Ga. App. 203, 206 (635 SE2d 825) (2006) (citation and punctuation omitted); see also OCGA § 13-4-4 ("Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.")

Even if Think Development originally warranted that the CTS service agreement could be transferred to Cloudious in November 2016, questions of fact remain as to whether Cloudious waived strict compliance with such agreement and/or the parties modified the agreement by continuing their relationship for approximately two years after they discovered that the service agreement could not be transferred immediately. See *Yash Solutions*, 352 Ga. App. at 134-136 (1) (a) (jury question remained as to waiver of contract provision where claimant continued performing under the agreement and also encouraged the opposing party to do so after learning of the alleged breach). The trial court, therefore, erred in granting Cloudious summary judgment on this ground.

(b) The trial court also found that Think Development breached the ASA by failing to transfer all monies received from CTS to Cloudious. According to the trial court, "the ASA required [Think Development] to remit 100% of all payments made by [CTS] under the [CTS] Contracts." The ASA, however, does not address transfer of payments from Think Development to Cloudious. Moreover, the evidence, construed favorably to Think Development, shows that Think Development did not intend to be involved in the CTS service agreement following execution of the ASA, but agreed to serve as a conduit between Cloudious and CTS when the parties learned that Cloudious initially could not operate as a CTS vendor. As part of that agreement, Think Development received payment from CTS for the Cloudious consulting services, and it remitted that payment to Cloudious, less an administrative fee and money that, according to Think Development, it was owed under the ASA.

Cloudious contends that it is entitled to all payments received from CTS following execution of the ASA. But at least some evidence supports the conclusion that the parties proceeded with the understanding that Think Development would retain a certain amount of those payments. Accordingly, questions of fact remain as to whether the parties reached an agreement outside of the ASA regarding the amount due Cloudious, whether Think Development was entitled to withhold any of the CTS

11

payments, and, if so, whether it withheld the proper amount. Cloudious was not entitled to summary judgment on this ground. See *Sims v. Bayside Capital*, 327 Ga. App. 47, 50 (1) (755 SE2d 520) (2014) ("Where there is a conflict in the evidence as to the existence of an oral contract or as to its terms, the matter must be submitted to a jury for resolution.") (citation and punctuation omitted).

(c) The trial court concluded that, as a matter of law, Think Development breached a fiduciary duty by failing to transmit all CTS payments to Cloudious. Even if the parties' relationship here gave rise to a fiduciary duty, however, questions of fact remain as to the amount owed Cloudious and whether Think Development properly withheld any of the payments. It follows that Cloudious was not entitled to summary judgment on its breach of fiduciary duty claim. See *Wright*, 317 Ga. App. at 289 (4) (because questions of fact remained as to whether the parties had entered an oral contract regarding distribution of corporate sale proceeds, a jury question also existed regarding plaintiff's breach of fiduciary duty claim relating to that alleged agreement).

2. The trial court also granted summary judgment to Cloudious on Think Development's request for attorney fees under OCGA § 13-6-11, which permits the jury to award a claimant the expenses of litigation "where the defendant has acted in

bad faith, has been stubbornly litigious, or has caused the [claimant] unnecessary trouble and expense[.]" Specifically, the trial court found that Think Development's "claim for OCGA § 13-6-11 attorney's fees . . . does not exist independent of [Cloudious] bringing the underlying action."

We recognize that "claims under OCGA § 13-6-11 must always travel with a viable and distinct (i.e., 'independent') cause of action." *SRM Group v. Travelers Property Cas. Co. of America*, 308 Ga. 404, 407 (2) (841 SE2d 729) (2020). But a counter-claimant "asserting an independent claim may seek, along with that claim, attorney fees and litigation expenses under OCGA § 13-6-11[.]" Id. at 404. And in this case, Think Development asserted independent counterclaims against Cloudious for breach of contract, money had and received, and unjust enrichment. As to each counterclaim, Think Development alleged that it was entitled to attorney fees because Cloudious had acted in bad faith, had been stubbornly litigious, or had caused Think Development unnecessary trouble and expense.

The trial court erred in finding that Think Development's attorney fee claim lacked an independent cause of action with which to travel. Moreover, although Cloudious argues that Think Development offered no evidence supporting its attorney fee request, "[q]uestions concerning bad faith under [OCGA § 13-6-11] are generally

13

for the jury to decide, and the trial court may grant judgment as a matter of law on such issues only in the rare case where there is absolutely no evidence to support the award of expenses of litigation." *Ga. Dermatologic Surgery Centers v. Pharis*, 323 Ga. App. 181, 184 (3) (746 SE2d 678) (2013) (citation and punctuation omitted).

Think Development offered evidence that Cloudious refused to pay Think Development for work performed by Think Development consultants at CTS, and, after Cloudious began receiving payments directly from CTS as an approved vendor, it failed to pay Think Development a percentage of those proceeds, in violation of the ASA. Joy also averred that Cloudious's failure to make payments forced Think Development to use other funds to meet its obligations. Given the record evidence, questions of fact remained as to bad faith and Think Development's claim for fees and expenses under OCGA § 13-6-11. See *Ga. Dermatologic Surgery Centers*, 323 Ga. App. at 184 (3); see also *Mariner Health Care Mgmt. Co. v. Sovereign Healthcare*, 306 Ga. App. 873, 877 (3) (703 SE2d 687) (2010) ("This is not such a rare case, and therefore [the defendant] is not entitled to summary judgment" on the plaintiff's claim for fees under OCGA § 13-6-11).

*Case No. A23A1043*

3. On cross-appeal, Cloudious argues that the trial court erred in failing to strike the Joy affidavit. A trial court's decision on a motion to strike an affidavit is reviewed for abuse of discretion. See *Hayward v. The Kroger Co.*, 317 Ga. App. 795, 797 (1) (733 SE2d 7) (2012). We find no abuse here.

According to Cloudious, many of the documents attached to Joy's affidavit (primarily emails, purchase orders, and invoices) are "hearsay on their face," and Joy failed to properly authenticate and bring these documents within the business records exception to the rule against hearsay. See OCGA § 24-8-803 (6). It argues that because the vast majority of the affidavit relies on such hearsay evidence, the affidavit should be stricken. The trial court found, however, that the documents attached to the affidavit were not presented for the truth of the matters asserted and thus did not constitute hearsay. See OCGA § 24-8-801 (c) ("'Hearsay'" means a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

Cloudious does not directly challenge this conclusion on appeal. Instead, it argues that if the documents are not considered for the truth of the matters asserted, "there is no probative value to the documents and [Joy's affidavit] testimony." But Joy averred that he had personal knowledge of the events described in his affidavit,

which include a detailed account of the negotiations preceding execution of the ASA; the parties' interactions after they signed the ASA; terms of a new, interim agreement reached when CTS initially refused to approve Cloudious as a vendor; and Cloudious's failure to pay Think Development after Cloudious became an approved vendor. Cloudious has not shown that Joy — Think Development's president, CEO, and person responsible for day-to-day operations — lacked sufficient personal knowledge to testify on these topics.

Furthermore, nothing in Joy's affidavit indicates that his testimony depended on review of the attached documents. Simply put, questions regarding the documents do not undermine the testimony given by Joy based on his personal knowledge. The trial court, therefore, did not abuse its discretion in denying the motion to strike. See OCGA § 9-11-56 (e) ("[A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); *Cox v. Mayan Lagoon Estates Ltd.*, 319 Ga. App. 101, 103 (1) (a) (734 SE2d 883) (2012) (trial court did not abuse its discretion in refusing to strike affidavit; although affiant failed to attach to her affidavit the documents she consulted, the "averments . . . were also based on her personal knowledge").

16

4. Cloudious claims that the trial court erred in denying it summary judgment on Think Development's counterclaims for breach of contract and unjust enrichment. Think Development, however, offered evidence that Cloudious received payments directly from CTS after it became an approved vendor, but failed to remit a percentage of those payments to Think Development, in violation of the ASA. Joy also testified that Cloudious owed Think Development money for work performed at CTS by Think Development consultants.

Given this evidence, the trial court properly found that questions of fact remain as to Think Development's breach of contract claim and its alternative, equitable claim for unjust enrichment.[3] See *UWork.com v. Paragon Technologies*, 321 Ga. App. 584, 590 (1) (740 SE2d 887) (2013) ("The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken.") (citation and punctuation

---

[3] We note that, as originally pled, Think Development's breach of contract claim included an allegation that Cloudious failed to comply with an administrative fee agreement reached by the parties following execution of the ASA. Think Development does not address the viability of this claim on appeal or cite any supporting evidence, and Joy testified that Think Development held back its administrative fee from the CTS payments remitted to Cloudious. Accordingly, to the extent Think Development still asserts a claim for breach of an administrative fee agreement, Cloudious is entitled to summary judgment on that claim.

omitted); *Estate of Crook v. Foster*, 333 Ga. App. 36, 39 (1) (775 SE2d 286) (2015). ("Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for.") (citation and punctuation omitted); see also OCGA § 9-11-8 (e) (2) ("A party may also state as many separate claims or defenses as he has, regardless of consistency and whether based on legal or on equitable grounds or on both.").

5. We agree with Cloudious, however, that the trial court erred in denying its motion for summary judgment on Think Development's separately stated claim for money had and received. "A claim for money had and received contains the following elements: a person has received money of the other that in equity and good conscience he should not be permitted to keep; demand for repayment has been made; and the demand was refused." *Wilson v. Wernowsky*, 355 Ga. App. 834, 843 (2) (b) (846 SE2d 101) (2020) (citation and punctuation omitted). Think Development has not pointed to — and we have not found — any evidence that it demanded repayment of funds that Cloudious allegedly withheld. The trial court, therefore, erred in denying Cloudious summary judgment on this claim. See *City of Atlanta v. Hotels.com*, 289

18

Ga. 323, 328 (4) (710 SE2d 766) (2011) (summary judgment on claim for money had and received proper where claimant made no demand for repayment).

To recap, in Case No. A23A1042, we reverse the grant of summary judgment to Cloudious on its breach of contract claim, its breach of fiduciary duty claims, and Think Development's counterclaim for attorney fees. In Case No. A23A1043, we affirm in part and reverse in part the trial court's decision denying Cloudious summary judgment on Think Development's substantive counterclaims. We also affirm the denial of Cloudious's motion to strike the Joy affidavit.

*Judgment in Case No. A23A1042 reversed; Judgment in Case No. A23A1043 affirmed in part and reversed in part. Miller, P. J., and Hodges, J., concur*.